OPINION
{¶ 1} Defendant-appellant Larry Morris appeals from his convictions of felonious assault and retaliation that were entered after a jury trial in the Monroe County Common Pleas Court. The main issue surrounds the court's jury instruction on self-defense and the duty to retreat. For the following reasons, appellant's convictions are reversed and this case is remanded because the trial court's instruction on selfdefense improperly imposed a duty to retreat on a defendant who was only alleged to have used non-deadly force.
 STATEMENT OF THE CASE {¶ 2} On March 6, 2003, appellant's wife called William David England and his wife to ask if they could come over and visit. Mr. England initially voiced concern because he had previously given statements to police incriminating appellant for fencing property that Mr. England had stolen. In fact, appellant had just been sentenced for the receiving stolen property offense two days earlier. Mrs. Morris said there were no hard feelings, so Mr. England agreed that they could come over. The foursome talked and drank alcohol together for three hours. Eventually, they began arguing about the incriminating statements Mr. England gave to authorities. It is from this point that the stories diverge.
 {¶ 3} According to Mr. England, who admits to drinking almost sixteen ounces of whiskey and six beers that day, appellant refused to leave after being asked to do so three or four times. Mr. England took his shotgun, which he always has leaning on the wall in the dining room, and walked into the kitchen to call the police. He came back to the dining room when he heard appellant's car start. (Tr. 131). Mrs. Morris asked if they could stay and drink more beer. Mr. England did not refuse because he knew the police were coming. (Tr. 132). Appellant then re-entered the house, asked if Mr. England was going to shoot him, and hit Mr. England in the left side of the face. Mr. England landed on the table, breaking three of its legs off. (Tr. 134). Mr. England stood up to blow his bleeding nose, and then (still according to Mr. England's own testimony) he threatened to shoot appellant. Appellant responded by hitting Mr. England seven to twelve times. (Tr. 135). Mr. England stated that he offered no resistance as he was busy trying to protect his stomach because he has bladder cancer. (Tr. 125-126, 135). Mr. England complained that he lost all vision until the next day, at which time he could see only from his right eye. His left eye, which appears in evidentiary photographs to be bulging and swollen shut, was left sightless for more than a month. He also complained of lingering headaches and permanently blurred vision in his left eye. (Tr. 139-140).
 {¶ 4} Mrs. England testified that her husband asked appellant to leave a couple times, retrieved his gun and the phone, and sat back down. (Tr. 197). She said that her husband put the gun back after appellant went outside. She was not in the room to see the first punch but heard a crash and entered the room to see her husband lying on the floor. (Tr. 199). She left the room again, heard her husband say he would shoot appellant, and heard appellant respond that he would shoot her husband. (Tr. 202). According to her testimony, she walked in to find appellant with the gun, and she asked him not to shoot her husband. Appellant then put the gun down "on [her husband's] stomach" and started hitting Mr. England. (Tr. 202, 205).
 {¶ 5} Appellant's wife testified that Mr. England, who was falling down drunk, pulled out a gun and threatened to shoot them; so, appellant tried to take the gun away. She denied that her husband hit Mr. England other than in the scuffle to disarm him. She also refuted that appellant successfully disarmed Mr. England. (Tr. 274, 278).
 {¶ 6} Appellant also stated that he only struggled with Mr. England in order to disarm him and that he never did disarm him. (Tr. 289). Appellant testified that Mrs. England advised him the gun was loaded and that she seemed scared so he was scared too. (Tr. 291). He admitted that he hit Mr. England a couple of times with one hand while he was trying to grab the gun with the other hand. (Tr. 310). Appellant stated that he finally just left Mr. England with the gun. Appellant claimed that he held no grudge against Mr. England for his prior statements to police. (Tr. 295).
 {¶ 7} Appellant was indicted for felonious assault, a second degree felony, and retaliation, a third degree felony. On September 25, 2003, the jury found appellant guilty as charged. On November 13, 2003, the court sentenced appellant to seven years for felonious assault to run concurrently with four years for retaliation. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 8} Appellant's first assignment of error provides:
 {¶ 9} "The trial court erroneously instructed the jury on the affirmative defense of self-defense by using an instruction applicable only to the use of deadly force, though deadly force was not at issue."
 {¶ 10} The trial court instructed the jury:
 {¶ 11} "To establish self-defense the defendant must prove: (A) he was not at fault in creating the situation giving rise to the injury that occurred; (B) he has reasonable grounds to believe and an honest belief that he was in imminent danger of bodily harm, and that his only means of retreat or escape from such danger was by the use of force; and (C) he must not have violated any duty to retreat or avoid the danger. Duty to retreat. The defendant had a duty to retreat if the defendant was at fault in creating the situation giving rise to the event in which the injury occurred." (Tr. II 48-49).
 {¶ 12} Appellant argues that he had no duty to retreat before using force that was not lethal force. Contrary to the state's response, there is no duty to retreat before using non-deadly
force. In the Matter of Morton, 7th Dist. No. 01BA29, 2002-Ohio-2648, at ¶ 25. The general duty to retreat only applies before using deadly force. Id.
 {¶ 13} As the state notes, our Morton case departed from some older case law out of this district, mentioning a duty to retreat in cases of non-deadly force. See State v. Berisford
(Oct. 19, 1990), 7th Dist. No. 89C10; State v. Hails (Nov. 13, 1981), 7th Dist. No. 81B12.
 {¶ 14} However, our more recent Morton case was a decision which brought the Seventh Appellate District in line with the persuasive case law out of the other appellate districts. See, e.g., State v. Hansen (May 7, 2002), 4th Dist. No. 01CA15;State v. Newton (Dec. 21, 2001), 2d Dist. No. 189344; State v.Evans (July 27, 2001), 2d Dist. No. 18512; State v. Roberts
(2000), 139 Ohio App.3d 757, 763 (1st Dist.); State v. Perez
(1991), 72 Ohio App.3d 468, 472 (10th Dist.); State v. Ghadiri
(Sept. 19, 1992), 8th Dist. No. 59266; Columbus v. Dawson
(1986), 33 Ohio App.3d 141, 142 (10th Dist.).
 {¶ 15} As can be seen from the above-quoted jury instructions, the trial court mentioned a duty to retreat three times. Appellant timely objected to the instruction imposing a duty to retreat upon him. (Tr.II 3-4). The trial court cited a Supreme Court case dealing with deadly force and decided to retain its language dealing with duty to retreat. (Tr.II 5). SeeState v. Williford (1990), 49 Ohio St.3d 247.
 {¶ 16} As aforementioned, this court and many others have held that the duty to retreat is not an element of self-defense where the force used by the defendant is nondeadly. Morton,
7th Dist. No. 01BA29. Rather, the duty to retreat applies when the defendant uses deadly force. State v. Williford (1990),49 Ohio St.3d 247, 250; State v. Robbins (1979), 58 Ohio St.2d 74,79-81. In other words, one need not run away before merely hitting someone who is about to hit (or do worse to) them.
 {¶ 17} Thus, the trial court erroneously determined that there is a duty to retreat in cases of non-deadly force. Although the jury may have found appellant to have been at fault in creating the situation thus negating the first element of his self-defense theory anyway, they may have alternatively focused on a determination that appellant failed to retreat before resorting to physical force. Thus, the error was not harmless. We conclude that appellant was prejudiced by the instruction imposing upon him a duty to retreat or escape. Accordingly, this assignment of error is sustained, appellant's convictions are reversed, and this case is remanded for a new trial.
 {¶ 18} In order to avoid a similar problem on remand, we shall continue with our analysis of the proper structure of the charge for non-deadly self-defense. At oral argument, the state complained about the uniform Ohio Jury Instructions on this topic.
 {¶ 19} First, we point out that O.J.I. 411.33.2 does not state as a third element that the defendant must not have violated a duty to retreat and does not define duty to retreat in this instruction. Second, we note that the first comment under this section provides, "When less than deadly force is used, the defendant has no duty to retreat." Third, it is important to remember that O.J.I. is not the law of the state, but merely represents commentary on the law.
 {¶ 20} Although the title of O.J.I. 411.31 is, "Self-defense against danger of death or great bodily harm," the text of the instruction makes it clear that it deals with defendant's whoused deadly force. The type of force used against the defendant is relevant in cases where the defendant used deadly force because it is an element of his defense. Although the type of force used against the defendant is relevant when the defendant responds with deadly force, the type of force used against him is not the test when he responds with simply non-deadly force. When the defendant responds with only non-deadly force, his burden cannot be elevated merely because he was unfortunate enough to have been faced with deadly force.
 {¶ 21} Merely because the title of O.J.I. 411.33 is, "Self-defense against danger of bodily harm," does not mean that the instruction is inapplicable when the defendant was faced with death or great bodily harm; both constitute types of bodily harm. More apt titles may have been, "Self-defense using deadly force against danger of death or great bodily harm" and "Self-defense using non-deadly force against any bodily harm," respectively. Nevertheless, the instruction dealing with a defendant's use of deadly force is not to be used as the model for a charge, as it was in this case, where the state and court agree that the defendant used only non-deadly force.
 {¶ 22} In conclusion, the elements of self-defense where the defendant is only alleged to have used non-deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant (even if mistaken) had a bona fide belief (which means a belief that was both objectively reasonable and subjectively honest) that he was in imminent danger of any bodily harm (whether it be deadly or non-deadly). See State v. Thomas (1997), 77 Ohio St.3d 323, 330
(where the Supreme Court reveals that its well-established use of the term "bona fide belief" carries both objective and subjective components).
 {¶ 23} We recognize that the pertinent sample charge in O.J.I. 411.33.2 adds to the end of the second element the following statement: "and that his/her only means to protect himself/herself from such danger was by the use of force not likely to cause death or great bodily harm." Nonetheless, the trial court here added, "and that his only means of escape orretreat from such danger was by the use of force." (Emphasis added). (Tr.II 48-49). This clearly imposes a duty to retreat unlike that contained in O.J.I. 411.33.2 (not to mention the fact that the trial court's instruction herein expressly charged that appellant must not have violated any duty to retreat).
 {¶ 24} For purposes of clarity on remand, we shall further elucidate our belief that even the phrase added to the end of O.J.I. 411.33.2 improperly would give the jury the impression that the defendant has a duty to retreat. Morton, supra, citingDawson, supra at 142 (where the Tenth District found it erroneous to add "and that the only means of escape from such danger was by injuring his assailant" to the second element). See, also, Newton, supra (holding that at least a special instruction specifically advising that the defendant had no duty to retreat should have been given to balance the "only means to protect himself" statement at the end of the second element).
 {¶ 25} Thus, on remand, this additional phrase at the end of the second element in O.J.I. 411.33.2 should not be utilized. Only our above recitation of the two elements relevant herein should be outlined for the jury. The use of non-deadly force does not have to be the one and only means of protection in order to prove a valid self-defense claim; otherwise, the court would in fact be imposing a duty to retreat.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 26} Appellant's second assignment of error contends:
 {¶ 27} "The evidence was such that reasonable minds could only conclude that the affirmative defense of self-defense had been proven by a preponderance of the evidence."
 {¶ 28} Appellant argues that finding against him on his affirmative defense was against the manifest weight of the evidence. Due to our resolution of appellant's first assignment of error, we need not address this contention.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 29} Appellant's third assignment of error alleges:
 {¶ 30} "The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence."
 {¶ 31} Under this assignment of error, appellant raises arguments concerning both weight and sufficiency of the evidence. Since we are reversing and remanding on the first assignment of error, the arguments concerning weight of the evidence need not be addressed. However, appellant's sufficiency arguments must still be addressed because reversal based on sufficiency bars retrial. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 32} Sufficiency is a test of adequacy. Id. at 386. Evidence is only insufficient if after viewing the evidence in the light most favorable to the state, no rational mind could find the elements satisfied beyond a reasonable doubt. State v.Goff (1998), 82 Ohio St.3d 123, 138.
 {¶ 33} Appellant first argues that the state presented insufficient evidence of serious physical harm, which is an element of felonious assault under R.C. 2903.11(A)(1). As used in the Revised Code, "serious physical harm to persons" includes:
 {¶ 34} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2909.01(A)(5).
 {¶ 35} Here, Mr. England testified that the first punch made his nose bleed and made his eye swell. He stated that appellant then hit him seven to twelve more times. (Tr. 131). After the assault, he was in a daze and everything was foggy. (Tr. 137). He could not see well from his right eye until the next day and could not see from his left eye for over a month. (Tr. 140). He suffered multiple contusions and substantial swelling. (Tr. 139). His visible injuries were apparent for three or four months. (Tr. 144). Mr. England also testified that he suffers permanent blurred vision in his left eye and recurring headaches due to the assault. (Tr. 139). He related that he has been to the Veteran's Hospital eight times since the assault due to his poor vision and headaches. (Tr. 178). As such, the state presented sufficient evidence of serious physical harm.
 {¶ 36} Appellant's next sufficiency argument concerns the retaliation conviction. Pursuant to R.C. 2921.05(A), retaliation is an offense stating as follows:
 {¶ 37} "No person, purposely and by force or by unlawfulthreat of harm to any person or property, shall retaliate againsta public servant, a party official, or an attorney or witnesswho was involved in a civil or criminal action or proceedingbecause the public servant, party official, attorney, orwitness discharged the duties of the public servant, party official, attorney, or witness." (Emphasis added to relevant portions).
 {¶ 38} Appellant argues that there was insufficient evidence to support the retaliation charge because there was "no evidence that England was ever a witness in any type of public proceeding or Grand Jury proceeding against [appellant]." The state responds by pointing to testimony demonstrating that Mr. England gave oral and written statements to law enforcement identifying appellant as his fence for stolen property. The state also notes that testimony showed that Mr. England incriminated appellant while testifying at a preliminary hearing. (Tr. 119-120). We are thus asked to determine whether giving oral and written statements to police and testifying in some unidentified preliminary hearing makes Mr. England a witness who was involved in a criminal action or proceeding and who discharged his duties as such witness.
 {¶ 39} There is not much law on the subject; however, the plain language of the statute is at issue. If the statute has clear and unambiguous meaning, then we simply apply the statute without interpretation. Here, R.C. 2921.05(A) does not state that the witness must have testified in order to discharge his duties. Such an interpretation would mean that a defendant can avoid a future retaliation charge if he pleads guilty to the crime on which the witness had information instead of going to trial. SeeState v. Fuqua, 3d Dist. No. 6-02-01, 2002-Ohio-4697, at ¶ 20 (making such observation).
 {¶ 40} The trial court in Fuqua noted that "witness" includes those who see or hear an event as well as those who testify in court about it. Id. at ¶ 9. The trial court also noted that "[t]he duties of a `witness' include not only the act of testifying but all of the preliminary aspects of becomingformally involved in the process of identification and casepreparation." Id. at ¶ 10 (emphasis added). The appellate court agreed and concluded that retaliation applies even if the witness never had to testify against the defendant. Id. at ¶ 20.
 {¶ 41} We find the above-quoted reasoning persuasive. As inFuqua, appellant pled guilty to the receiving stolen property offense that resulted from Mr. England's statements. (Tr. 298). Hence, there was no opportunity for Mr. England to testify against him at trial. As the Fuqua case held, a witness can be involved in a criminal proceeding or action and discharge his duties as a witness without testifying. Thus, the state presented sufficient evidence that Mr. England was involved in a criminal proceeding and discharged his duties by giving incriminating oral and written statements against appellant to police and naming him in testimony at a preliminary hearing. In accordance, this assignment of error is overruled.
 {¶ 42} For the foregoing reasons, the judgment of the trial court is hereby reversed and this case is remanded to the trial court for a new trial.
Donofrio, J., concurs., DeGenaro, J., concurs.