DECISION AND JUDGMENT ENTRY
{¶ 1} Donald E. Maine appeals the trial court's judgment convicting him of domestic violence. First, he argues that the trial court implicitly instructed the jury that he had a duty to retreat before he could defend himself with non-deadly force. We agree, but because Maine failed to object to the court's instructions, he has waived all but plain error. We conclude that the pattern jury instruction, which the court adopted, incorrectly states the law and thus created a distinct probability that the jury was misled. Since allowing the jury to use an improper statement of law amounts to a manifest miscarriage of justice, we reverse Maine's conviction and remand for a new trial.
 {¶ 2} Second, Maine contends that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because he proved that he acted in self-defense. The record contains ample evidence to establish that Maine pushed his sister off the porch and caused her to fall on a concrete sidewalk. Since the jury is charged with determining the credibility of each witness, it was free to reject his claim that his actions arose solely from his attempt to defend himself and/or his home. Thus, Maine's second argument is meritless.
 {¶ 3} Third, Maine argues that he received ineffective assistance of counsel. Our disposition of the first assignment of error renders this issue moot.
 {¶ 4} On January 22, 2004, Maine, who is 6'1", 277 pounds, and his sister, Deborah Wiley, who is 5'2" tall, 140 pounds, had an altercation. As with most criminal altercations, there are two sides to this story. Wiley stated that on that date, she went to her mother's home to pick her up and take her to a doctor's appointment. Maine, who lives in the basement of the mother's home, answered the door and told Wiley that their mother did not want to see her and did not want to go to her doctor's appointment. Wiley nonetheless stepped inside the entryway and demanded to talk to her mother. After the parties exchanged further words, Maine pushed Wiley and her body struck the door jamb. Wiley claimed that Maine continued to push her, then grabbed her hair and pushed her across the porch, causing her to fall onto the concrete sidewalk. Wiley denied provoking Maine.
 {¶ 5} Maine, while not denying that Wiley ended up on the concrete sidewalk, claimed that he only acted in self-defense. He asserted that he told Wiley to leave and that their mother did not want to see her, but Wiley insisted on seeing their mother before leaving. He stated that Wiley kept trying to push her way into the home, but because he was blocking her way, she ended up pushing him as well. He alleged that she almost pushed him down the basement stairs.
 {¶ 6} Maine subsequently stood trial for domestic violence and claimed self-defense. The court gave the jury the following instructions regarding Maine's self-defense theory:
The defendant is asserting an affirmative defense of self defense. The defendant claims that what he did was justified on the basis of self defense. To establish self defense, the defendant must prove that the defendant was not at fault in creating the situation giving rise to the confrontation with Deborah D. Wiley, and the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that he was in imminent danger of bodily harm, and that his only means to protecthimself from such danger was by the use of force, not likely to cause death or great bodily injury.
Self defense tests for reasonableness. Words. Words alone do not justify the use of force. Resort to such force is not justified by abusive language, verbal threats or other words no matter how provocative.
In deciding whether Donald E. Maine had reasonable grounds to believe, and an honest belief that he was in imminent danger of bodily harm, you must put yourself in the position of the defendant, with his characteristics, and his knowledge of lack of knowledge, and under the circumstances and conditions that surrounded him at the time.
You must consider the conduct of Deborah D. Wiley and decide if her acts caused Donald E. Maine to reasonably and honestly believe that he was about to receive imminent bodily harm.
Excessive force. The law does not measure in niceties the degree of force which may be used to repel an attack. However, if the defendant used more force than reasonably appears to be necessary under the circumstances, and if the force used is so greatly disproportionate to his apparent danger as to show an unreasonable purpose to injure Deborah D. Wiley, then the defense of self defense is not available.
Aggressor. The defendant must establish that the other party was the aggressor, and that the defendant did not himself provoke and cause the injury. The defense of self defense is not available to the person who starts a fight unless, in good faith, he withdraws from the contest, informs the other party of his withdrawal, or by words or acts, reasonably indicates that he has withdrawn and is no longer participating in the fight.
Troublemaker. A defendant is not in a position to claim self defense if he sought trouble and provoked a fight.
Self defense ceases if in the careful and proper use of his facilities, the defendant honestly believed and had reasonable grounds to believe that the assailant was not able and did not intend to use unlawful force to harm the defendant. Then the defendant, having notice of his adversary's position, was released from the danger, and the right to use force in self defense ended. If thereafter, the defendant continues to fight, he becomes the aggressor, and the subsequent injury to another is unlawful. (emphasis supplied.)
 {¶ 7} Maine did not object to the court's instructions. The jury subsequently found him guilty of domestic violence.
 {¶ 8} Maine appealed the trial court's judgment and raises the following assignments of error:
First Assignment of Error:
The trial court erred in its instructions to the jury on the law of self-defense and defense of property, and thereby deprived Mr. Maine of his right to a fair trial before a properly instructed jury, and his right to due process of law, as guaranteed by the Fifth and Fourteenth
Amendments to the United States Constitution, and Section 16, Article I
of the Ohio Constitution.
Second Assignment of Error:
The trial court erred when it entered a judgment of conviction in the absence of sufficient evidence to establish Mr. Maine's guilt, and when Mr. Maine's conviction was against the manifest weight of the evidence. These errors deprived Mr. Maine of his right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
Third Assignment of Error:
Mr. Maine was deprived of his right to the effective assistance of trial counsel, based on trial counsel's deficient and prejudicial performance, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.
 I. {¶ 9} In his first assignment of error, Maine contends that the trial court's self-defense instructions improperly implied to the jury that Maine had a duty to retreat before using non-deadly force while in his home. Specifically, he challenges the court's instruction that Maine must show that the "only means [he had] to protect himself from such danger [by the victim] was by the use of force." He additionally asserts that the court's instructions wrongly conveyed to the jury that he was not entitled to use non-deadly force in response to Wiley's words and actions. Maine recognizes that counsel did not object to any of the court's self-defense instruction, but asserts that the error constitutes plain error.
 {¶ 10} Because Maine's counsel did not object to the court's self-defense instruction, he waived all but plain error. See Crim.R. 52(B); State v. Williford (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279
("We have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver."). We take notice of plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. See, e.g., State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. See, e.g., Statev. Biros (1997), 78 Ohio St.3d 426, 678 N.E.2d 891. A reviewing court should consider noticing plain error only if the error "`"seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."'" State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240 (quoting United States v. Olano [1993], 507 U.S. 725, 736,113 S.Ct. 1770, 123 L.Ed.2d 508, quoting United States v. Atkinson
[1936], 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555).
 {¶ 11} "A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." State v. Cousins (Aug. 14, 1991), Ross App. No. 1735, citingWilliford, supra; State v. Guster (1981), 66 Ohio St.2d 266,421 N.E.2d 157. When we review a trial court's jury instructions, we may not judge "`a single instruction to a jury * * * in artificial isolation," but we must view it "`in the context of the overall charge.'"State v. Madrigal (2000), 87 Ohio St.3d 378, 396, 721 N.E.2d 52 (quotingCupp v. Naughten [1973], 414 U.S. 141, 146-147, 94 S.Ct. 396,38 L.Ed.2d 368; State v. Price [1979], 60 Ohio St.2d 136, 398 N.E.2d 772, paragraph four of the syllabus); see, also, State v. Lewis (1993),67 Ohio St.3d 200, 203, 616 N.E.2d 921. Thus, we must consider the jury instructions "as a whole" and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. See Becker v. Lake Cty. Mem. Hosp. West
(1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165; see, also, State v. Coe,153 Ohio App.3d 44, 2003-Ohio-2732, 790 N.E.2d 1222. As the court explained in State v. Hardy (1971), 28 Ohio St.2d 89, 92, 276 N.E.2d 247:
In determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in its relation to, and as it affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results.
We must not reverse a conviction due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict. See Parma Heights v. Jaros (1990), 69 Ohio App.3d 623, 630,591 N.E.2d 726; State v. Speakman (Mar. 27, 2001), Pickaway App. No. 00CA35.
 {¶ 12} In this case, the court's jury instructions incorrectly stated the law. Under Ohio law, self-defense is an affirmative defense. Statev. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, affirmed Martin v.Ohio (1987), 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267. The parties agree this is a non-deadly force case. Thus, to prove self-defense, the defendant must show (1) the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant had a bona fide belief that he was in imminent danger of bodily harm. See, e.g.,Akron v. Dokes (1986), 31 Ohio App.3d 24, 25, 507 N.E.2d 1158; Statev. Morris, Monroe App. No. 03MO12, 2004-Ohio-6810; State v. Roth,
Hamilton App. No. C-030303, 2004-Ohio-374. The defendant must prove both of these elements by a preponderance of the evidence in order to demonstrate that he acted in self-defense. State v. Williford (1990),49 Ohio St.3d 247, 249, 551 N.E.2d 1279; State v. Jackson (1986),22 Ohio St.3d 281, 284, 490 N.E.2d 893. In a non-deadly force self-defense case, the defendant need not show that he failed to retreat. See State v. Perez (1991), 72 Ohio App.3d 468, 472,594 N.E.2d 1041; State v. Fox (1987), 36 Ohio App.3d 78, 520 N.E.2d 1390;State v. Hansen, Athens App. No. 01CA15, 2002-Ohio-6135. Furthermore, "there is no duty to retreat from one's home." Williford,49 Ohio St.3d at 250.
 {¶ 13} The Ohio pattern jury instructions suggest that a trial court use the following instruction in a non-deadly force self-defense case: "To establish self-defense, the defendant must prove: (A) the defendant was not at fault in creating the situation giving rise to [the event]; and (B) the defendant had reasonable grounds to believe and an honest belief, even though mistaken, that he/she was in (imminent) (immediate) danger of bodily harm and that his/her only means to protect himself/herself from such danger was by the use of force not likely to cause death or great bodily harm." See 4 O.J.I. 411.33. In this case, the court's self-defense instruction closely mirrors the pattern instruction.
 {¶ 14} Maine claims that in Morris, supra, the court rejected the type of instruction found in the Ohio pattern instructions as it implies that the defendant has a duty to retreat. In Morris, the court instructed the jury:
To establish self-defense the defendant must prove: (A) he was not at fault in creating the situation giving rise to the injury that occurred; (B) he has reasonable grounds to believe and an honest belief that he was in imminent danger of bodily harm, and that his only means of retreat or escape from such danger was by the use of force; and (C) he must not have violated any duty to retreat or avoid the danger. Duty to retreat. The defendant had a duty to retreat if the defendant was at fault in creating the situation giving rise to the event in which the injury occurred.
 {¶ 15} Morris, however, is somewhat distinguishable. In Morris, "the trial court mentioned a duty to retreat three times," id. at ¶ 15, and the defendant objected to the court's instructions. Here, in contrast, the court never mentioned a "duty to retreat" and Maine did not object to any part of the court's instruction.
 {¶ 16} However, Morris further concluded that both the sample charge in Ohio Jury Instruction 411.33.2, which adds, "and that his/her only means to protect himself/herself from such danger was by the use of force not likely to cause death or great bodily harm," and the trial court's instruction, "and that his only means of escape or retreat from such danger was by the use of force," improperly imply a duty to retreat. Id. at ¶ 24. The court stated: "The use of non-deadly force does not have to be the one and only means of protection in order to prove a valid self-defense claim; otherwise, the court would in fact be imposing a duty to retreat." See, also, State v. Newton (Dec. 12, 2001), Montgomery App. No. 18934.
 {¶ 17} We agree with criticism of the pattern jury instruction and conclude that the trial court erred in giving it here. When a court misstates the law, even though it acted in reliance upon the pattern jury instructions, we conclude that fundamental fairness requires us to reverse the conviction. To do otherwise would result in a manifest miscarriage of justice, even though the trial court should not be criticized for using the O.J.I. instruction where the accused fails to object to it.
 II. {¶ 18} In his second assignment of error, Maine argues that his conviction is against the manifest weight of the evidence and that sufficient evidence does not support it. He contends that because he simply was defending his home, he had an absolute right to use any force necessary to prevent Wiley's entry.
 {¶ 19} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. See, e.g., State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. (citing Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560). Reviewing courts will not overturn convictions on sufficiency of evidence claims unless reasonable minds could not reach the conclusion reached by the trier of fact. See State v. Tibbetts (2001), 92 Ohio St.3d 146, 749 N.E.2d 226;State v. Treesh (2001), 90 Ohio St.3d 460, 739 N.E.2d 749.
 {¶ 20} Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." State v.Thompkins (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (Cook, J., concurring); see, also, State v. Noling (2002), 98 Ohio St.3d 44, 49-50,781 N.E.2d 88 (stating that "the trier of fact * * * is burdened with assessing the credibility and veracity of witnesses). The trier of fact may believe all, part or none of the testimony of each witness who appeared before it. See, e.g., State v. Long (1998), 127 Ohio App.3d 328,335, 713 N.E.2d 1.
 {¶ 21} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. On the other hand, we will not reverse a conviction so long as the State presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy (1998),84 Ohio St.3d 180, 193-194, 702 N.E.2d 866; State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132, syllabus. In conducting our review, we are guided by the presumption that the jury "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 22} Here, the jury convicted Maine of domestic violence, in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The record contains both sufficient and substantial evidence to support Maine's conviction.
 {¶ 23} The evidence shows that Maine pushed his sister and caused her to land on the concrete sidewalk below the porch. The jury obviously rejected Maine's claim of self-defense, concluding either that he was at fault in creating the situation or that he could not have reasonably believed that his 5'2" sister posed a threat to his 6'1" frame. Although Maine contends that Wiley was the initial aggressor, the evidence supports an opposite finding. The jury obviously disbelieved Maine's version of the altercation. We will not second-guess the jury's credibility determination unless the testimony is seriously lacking in credibility. We find nothing about the state's witnesses' testimony that approaches this threshold.
 {¶ 24} We reject Maine's claim that the record does not contain credible evidence regarding the physical harm element. A reasonable juror certainly would conclude that pushing someone onto a concrete sidewalk constitutes an attempt to cause physical harm.
 {¶ 25} Maine's assertion that he had an absolute right to defend his home is not entirely correct. To support this argument, Maine refers to the following statement from Williford: "Where one is assaulted in his home, or the home itself is attacked, he may use such means as are necessary to repel the assailant from the house, or to prevent his forcible entry, or material injury to his home, even to the taking of life.' State v. Peacock (1883), 40 Ohio St 333, 334. Implicit in this statement of law is the rule that there is no duty to retreat from one's home." Id. at 250. Contrary to Maine's belief, the no-duty-to-retreat-from-one's-home rule does not ipso facto establish self-defense. Instead, when invoking self-defense, the defendant still must prove that he was not at fault in creating the affray and that his belief of danger or imminent bodily harm was reasonable. Cf. State v.Seymour (Nov. 9, 1993), Pickaway App. No. 90CA38 ("We reject appellant's assertion that once an individual is assaulted in her home, she may use any force necessary to repel her attacker. The force used must be reasonable under the circumstances.").
 {¶ 26} Additionally, under the rule set forth in Williford, the defendant must show that he was assaulted in his home or that his home was attacked. Here, the evidence supports a finding that Maine first assaulted or attacked Wiley. Evidence exists that Wiley did not initiate an aggressive encounter. Wiley indisputably went to her mother's home to check on her and while she may have been forceful in her desire to see her mother, the evidence supports a finding she did not first attack Maine in order to gain access to the home. The right to defend one's home does not include the right to attack any person who may knock on the door.
 {¶ 27} Accordingly, based upon the foregoing reasons, we overrule Maine's second assignment of error.
 III. {¶ 28} Our disposition of the first assignment of error renders the third assignment of error moot.
 {¶ 29} Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that the Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.