[Cite as *State v. Fields*, 2016-Ohio-8212.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 15 MA 0193 |
| V. | ) | |
| | ) | OPINION |
| EDWARD FIELDS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Youngstown
Municipal Court of Mahoning County,
Ohio
Case No. 14 CRB 1162

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     Kathleen Thompson
Assistant Prosecutor
City of Youngstown Prosecutor's Office
26 S. Phelps Street, 4th Floor
Youngstown, Ohio 44503

For Defendant-Appellant     Attorney John D. Falgiani, Jr.
P.O. Box 8533
Warren, Ohio 44484

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: December 15, 2016

DONOFRIO, P.J.

{¶1} Defendant-appellant, Edward Fields, appeals from a Youngstown Municipal Court judgment convicting him of domestic violence after a jury trial.

{¶2} On June 1, 2014, Youngstown Police responded to a 911 call from appellant who stated that his girlfriend and the mother of his child, C.K., was "trashing" his house. The two had gone out drinking together that night. They began arguing at a bar and the argument continued on the way back to appellant's house. According to appellant, when they arrived back at his house, he wanted C.K. to leave but she followed him into his house. Their argument escalated and C.K. began to throw things. The argument continued as C.K. refused to leave. Appellant eventually called 911 asking the police to get C.K. out of his house. During the 911 call, appellant repeatedly told C.K. to leave. He also stated that C.K. hit him in the head with a liquor bottle. Also during the 911 call, C.K. can be heard screaming and crying and appellant can be heard threatening her.

{¶3} Upon arriving at the scene, a police officer witnessed appellant jump up and kick C.K. in the face, causing her to fall over. C.K. was bleeding from the face and her lip was cut.

{¶4} Officers arrested appellant and charged him with domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(B).

{¶5} The matter proceeded to a jury trial. The jury found appellant guilty as charged. Subsequently, the trial court sentenced appellant to 180 days in jail, 150 days suspended, and a $250 fine.

{¶6} Appellant filed a timely notice of appeal on October 28, 2015. The trial court granted appellant's motion to stay his sentence pending this appeal. Appellant now raises three assignments of error.

{¶7} Appellant's first assignment of error states:

THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶8} Appellant argues here that his conviction was against the manifest

weight of the evidence. He notes that C.K. had no independent recollection of the altercation due to her intoxication at the time. Additionally, he points us to his testimony that C.K. hit him and was destroying his property. Appellant asserts there is no evidence that he was responsible for starting the altercation. Instead, he claims the evidence was clear that he was defending himself and just wanted C.K. to leave and stop damaging his property.

{¶9} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1987). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id*. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id*. at 390.

{¶10} Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact who sits in the best position to judge the weight of the evidence and the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99-CA-149, 2002-Ohio-1152.

{¶11} The jury convicted appellant of domestic violence in violation of R.C. 2919.25(B), which provides that "[n]o person shall recklessly cause serious physical harm to a family or household member."  C.K. is considered appellant's family member because she and appellant have a child together.  R.C. 2919.25(F)(1)(b).

{¶12} In determining whether the jury's verdict was against the manifest weight of the evidence, we must consider the evidence put forth at trial.

{¶13} The state called two witnesses, Youngstown Police Officer Jerry Fulmer and C.K.

{¶14} Officer Fulmer was the first witness.  Officer Fulmer was dispatched to a call of a man wanting an intoxicated woman, who was "tearing up" his house, out of his house on Winona Drive.  (Tr. 75).  As he pulled up to the house, Officer Fulmer saw appellant jump up and kick C.K. in the face.  (Tr. 76).  This caused both appellant and C.K. to fall to the ground.  (Tr. 76).  Officer Fulmer immediately ran over and placed appellant in handcuffs and called an ambulance.  (Tr. 77).  Officer Fulmer testified that C.K. was bleeding from the face and had a split lip.  (Tr. 78).  He also stated that she was hysterical and intoxicated.  (Tr. 78).  Officer Fulmer stated that C.K. told him she was drunk and did not recall exactly what happened but she knew that her face hurt.  (Tr. 78).  Officer Fulmer also stated appellant told him that he too had been drinking and he appeared to the officer to be intoxicated; however, he was more coherent than C.K.  (Tr. 79).

{¶15} Officer Fulmer went on to testify that appellant told him C.K. had struck him with a liquor bottle.  (Tr. 80).  But when the officer checked appellant for injuries, he did not find any.  (Tr. 80-81).  Additionally, the officer did not find a liquor bottle.  (Tr. 81).

{¶16} C.K. testified next. She testified that at the time of the incident she and appellant had been in a relationship for two years and had a six-month-old son together.  (Tr. 90-91).  On the night in question, C.K. stated she and appellant went out to a bar.  (Tr. 92).  She stated she got very intoxicated.  (Tr. 92).  The next thing she remembered was waking up in her bed.  (Tr. 92-93).  C.K. stated her body was a

little achy and she had a small amount of blood on her lip. (Tr. 93). She did not remember any involvement with the police. (Tr. 93).

**{¶17}** The defense called three witnesses.

**{¶18}** Iysha Fant-Newell was the first defense witness. Fant-Newell's house is "catty-corner" from appellant's house. (Tr. 100). On the night in question, Fant-Newell heard screaming so she went out onto her porch to see what it was. (Tr. 100). She stated she could hear C.K. yelling from inside appellant's house that she was not getting out. (Tr. 100-101). And she saw appellant outside on the phone. (Tr. 101). Next, Fant-Newell watched as C.K. came outside and threw a bottle at appellant. (Tr. 101). Fant-Newell then went back into her house. (Tr. 101-102). When she came back outside, Fant-Newell stated that the police had arrived. (Tr. 102). She did not see appellant kick C.K., but she stated she was not outside when the police first arrived. (Tr. 102, 108). Fant-Newell stated that the lighting conditions on the street were poor; however, she also stated that there was a streetlight "that's right there that you can see." (Tr. 103).

**{¶19}** Detective Charles Swanson was the next defense witness. Detective Swanson is the officer in charge of the Youngstown 911 Center. (Tr. 110). He made a copy of appellant's call to 911 on the night in question. (Tr. 111). Defense counsel played the 911 call for the jury. (Def. Ex. A).

**{¶20}** On the 911 recording, appellant tells the 911 operator that C.K. will not leave his house. Appellant then makes numerous statements to C.K. such as, "get up out my house," "get your hands off me," and "bitch I bust your fuckin' head." C.K. can also be heard screaming. The operator then asks if anyone is hurt and appellant responds "no." A loud slap is heard followed by C.K. crying and screaming. C.K. can also be heard saying, "Please help me, he is kicking me." The operator tells appellant to walk away from C.K. Appellant tells the operator C.K. is throwing pots and pans in his house. Next, appellant yells at C.K., "I'm gonna let my dogs loose on your ass." Then appellant says to C.K., "throw something else at me again." Appellant then tells the operator that C.K. hit him in the head with a liquor bottle.

Throughout the entire call C.K. can be heard yelling and/or crying in the background. Additionally, appellant tells C.K. repeatedly to get out of his house.

{¶21} Appellant was the final witness. He testified that on the night in question he and C.K. went out to a bar called Yank's. (Tr. 115). At the bar, C.K. had numerous shots and appellant had a few drinks. (Tr. 116). Appellant stated they were at the bar for three hours. (Tr. 116). On the way home, the two argued about an incident that occurred in the bar where appellant accidentally burned another woman with his cigarette and C.K. became jealous when he apologized to her. (Tr. 116-117). Appellant stated that when they arrived back at his house, he got out of the van and assumed C.K. was going home but instead she followed him into his house. (Tr. 117). Appellant testified that he told C.K. to go home but she insisted she was not leaving. (Tr. 117). Appellant stated that the two continued to argue. (Tr. 118). He stated that C.K. slapped his phone out of his hand. (Tr. 119). Appellant testified that C.K. ran around his house throwing things. (Tr. 119, 121). He then called 911 to get her out of his house. (Tr. 121). Appellant stated C.K. was following him around his house pushing him. (Tr. 121). He then walked out of his house and back in but she followed him. (Tr. 122). Appellant stated that C.K. was throwing pictures off of the wall and throwing things at his television. (Tr. 123).

{¶22} Appellant testified that by this time he was going to get his corso cane mastiff dogs from the backyard to "let loose" at C.K.. (Tr. 123). While outside, he stated that C.K. threw a bottle of liquor at him that hit him in the chest. (Tr. 124). Then he stated the police arrived and grabbed him. (Tr. 124).

{¶23} Appellant admitted on cross examination that he was going to let his dogs loose, each of which weighed over 100 pounds, to bite C.K. (Tr. 132-133). Appellant also stated the only time he put his hands on C.K. was to push her off of him. (Tr. 134). And appellant stated that the sound on the 911 recording that sounded like a slap was him putting his forearm up to get C.K. off of him. (Tr. 137). He specifically denied kicking C.K. in the head. (Tr. 141). Appellant stated that Officer Fulmer's "vision and what he may have seen is not what happened." (Tr.

141).

**{¶24}** Based on the above evidence, we cannot conclude that the jury's verdict was against the manifest weight of the evidence. Officer Fulmer clearly testified that he witnessed appellant jump up and kick C.K. in the face. This caused her to fall over and suffer injuries to her lip and face. Specifically, Officer Fulmer stated that C.K. was bleeding from her face and she had a split lip. And C.K. testified that the next morning she awoke feeling achy with blood on her lip. Even though C.K. was unable to recall the incident due to her intoxication at the time, Officer Fulmer's testimony demonstrated that appellant recklessly caused serious physical harm to C.K. Moreover, C.K.'s testimony about her condition the next morning corroborated Officer Fulmer's testimony that appellant kicked her in the face and she fell to the ground.

**{¶25}** Furthermore, even if appellant was defending his property to some extent during the altercation and trying to get C.K. to leave his house, this is not a defense to kicking her in the face. When appellant kicked C.K., the two were outside of appellant's house. Thus, appellant cannot claim he was defending his property. Appellant also claims he was defending himself. But Officer Fulmer testified that appellant jumped up in the air and kicked C.K. in the face and appellant outright denied that he kicked C.K. in the face. It was up to the jury to weigh the conflicting testimony and to determine which witness was more credible. *Rouse,* 2005-Ohio-6328, ¶ 49. The jury found Officer Fulmer to be the more credible witness. We will not second-guess the jury's credibility determination.

**{¶26}** Based on the above, the jury did not lose its way and create a manifest miscarriage of justice. In other words, the jury's verdict was not against the manifest weight of the evidence.

**{¶27}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶28}** Appellant's second assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE

JURY ON THE AFFIRMATIVE DEFENSE OF "SELF-DEFENSE" AND "DEFENSE OF PROPERTY."

**{¶29}** In this assignment of error appellant asserts the trial court should have given jury instructions on both self-defense and defense of property. He points out that C.K. was so intoxicated she could not recall what happened that night. On the other hand, he points to his own testimony that C.K. was damaging his property and attacking him. Therefore, he claims, he had no duty to retreat.

**{¶30}** In this case, the trial court did not give an instruction on self-defense or on defense of property. But appellant did not object to the jury instructions or request a self-defense or defense of property instruction. Therefore, our review is limited to plain error.

**{¶31}** Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). To prevail on a claim governed by the plain error standard, an appellant must demonstrate that the trial outcome would have been clearly different but for the alleged error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

**{¶32}** Appellant asserts the court should have given an instruction on self-defense where he was alleged to have used non-deadly force to defend himself.

**{¶33}** The elements of the affirmative defense of self-defense where the defendant is alleged to have used non-deadly force are: "(1) the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant (even if mistaken) had a bona fide belief (which means a belief that was both objectively reasonable and subjectively honest) that he was in imminent danger of any bodily harm (whether it be deadly or non-deadly)." *State v. Morris*, 7th Dist. No. 03 MO 12, 2004-Ohio-6810, ¶ 22. Moreover, the defendant must prove the force he used in defense was commensurate with the threatened danger before he can claim self-defense in a non-deadly force case. *Struthers v. Williams*, 7th Dist. No. 07 MA 55, 2008-Ohio-6637, ¶ 17.

**{¶34}** In this case, a self-defense instruction was not warranted. Appellant's

conviction for domestic violence was based on Officer Fulmer's testimony that he witnessed appellant jump into the air and kick C.K. in the face causing injury to her face and lip. At no time did appellant testify or even suggest that he jumped and kicked C.K. in the face as a self-defense measure. In fact, appellant testified that he did not kick C.K. in the head or face and that Officer Fulmer's testimony was mistaken. Thus, even though appellant testified regarding the continuing affray between him and C.K., at the point in time when the domestic violence for which he was convicted occurred, there was no evidence that appellant was defending himself. The jury had to make a choice between two options: either appellant jumped up and kicked C.K. in the face causing injury to her or he did not. There was no evidence that appellant may have kicked C.K. in the face in an effort to defend himself. Therefore, the court did not commit plain error in failing to give a self-defense instruction.

{¶35} Appellant also asserts the court should have given an instruction on defense of property. Defense of property is related to self-defense. *State v. Perez*, 7th Dist. No. 09 MA 30, 2010-Ohio-3168, ¶ 14. To prove the affirmative defense of defense of property, the defendant must present evidence that he reasonably believed his conduct was necessary to defend his property against the imminent use of unlawful force, and the force he used in defense was not likely to cause death or great bodily harm. *State v. Moses*, 10th Dist. No. 13AP-816, 2014-Ohio-1748, ¶ 41.

{¶36} In this case, there was testimony that C.K. was throwing things in appellant's house and potentially damaging his personal property. But this occurred when appellant and C.K. were inside appellant's house. Appellant did not jump up and kick C.K. until the two were outside. At that time, appellant could not have believed his property was under an imminent threat of use of unlawful force. In other words, when appellant kicked C.K. in the face, it was not because she was about to damage his property. She was not even in his house. Thus, the trial court did not commit plain error in failing to give a jury instruction on defense of property.

{¶37} Accordingly, appellant's second assignment of error is without merit and

is overruled.

**{¶38}** Appellant's third assignment of error states:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.

**{¶39}** Here appellant argues his counsel was ineffective because counsel agreed to the jury instructions that did not contain self-defense and defense-of-property instructions. Appellant asserts this was not a matter of trial strategy but instead was an oversight by counsel. He claims prejudice as a result of the lacking jury instructions.

**{¶40}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶41}** Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶42}** As discussed above, jury instructions on self-defense or defense of property were not warranted in this case. Consequently, defense counsel could not be ineffective for failing to request them.

**{¶43}** Accordingly, appellant's third assignment of error is without merit.

**{¶44}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Robb, J., concurs.