The STATE of Ohio, Appellee,

v.

DYKAS, Appellant.

[Cite as *State v. Dykas*, 185 Ohio App.3d 763, 2010-Ohio-359.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92683.

Decided Feb. 4, 2010.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Edward G. Lentz, Assistant Prosecuting Attorney, for appellee.

Sidoti & Sidoti Co., L.P.A., and Marcus S. Sidoti, for appellant.

LARRY A. JONES, Judge.

{¶ 1} Defendant-appellant, Derrick Dykas, appeals his convictions for involuntary manslaughter and assault. Finding no merit to the appeal, we affirm his conviction.

{¶ 2} In 2008, Dykas was charged with involuntary manslaughter and felonious assault. The matter proceeded to a jury trial, at which the following evidence was presented.

{¶ 3} In March 2008, Dykas, who was visiting Cleveland from Michigan, was at Johnny Malloy's, a bar in Lakewood, with some friends. The victim, Matthew Hockey, was also at the bar with friends. Hockey and Dykas got into an argument inside the bar. A bar employee noticed that Hockey was drunk and told him to leave. Hockey left. When Dykas left the bar, Hockey was still outside, and the two men exchanged words again. Dykas punched Hockey in the face, and Hockey fell to the ground.

{¶ 4} Hockey's friend, James Trabert, and another eyewitness, Thomas Walling, testified that Hockey was turning away from Dykas when Dykas punched him. Walling testified that Hockey's head "bounced" when it hit the sidewalk, and multiple witnesses, including Dykas, testified that Hockey slumped or collapsed to the ground after being punched.

{¶ 5} Trabert tried to help Hockey to his feet, but Hockey was unresponsive. A driver of a passing pickup truck asked Trabert whether he needed help, and Trabert was able to put Hockey into the pickup truck. The driver then drove

Hockey home, with Trabert running alongside the truck directing the driver. Trabert helped Hockey upstairs and into bed. He stayed with Hockey for a few hours because he thought that Hockey might have a concussion. Hockey subsequently died in his sleep from what the coroner classified as an epidural hematoma. The coroner testified that the cause of death was a blunt impact resulting in skull and brain injuries. She opined that a skull fracture of that nature would not likely be caused by a punch, but from a subsequent fall creating contact between the skull and a hard object, such as a sidewalk.

{¶ 6} Dykas testified that he and Hockey were arguing about the clothing each man was wearing. He testified that Hockey and Trabert were leaving and had crossed part of the street when the victim suddenly returned, with his fists clenched. He further testified that he struck Hockey first because he thought he was in danger. He admitted telling the detective that he thought he had knocked Hockey out and testified that he "got [Hockey] clean in the jaw."

{¶ 7} The jury convicted Dykas of the lesser included offenses of involuntary manslaughter and assault. The trial court sentenced him to a total of three years in prison and ordered him to pay $8,000 in restitution for Hockey's funeral expenses.

{¶ 8} It is from this judgment that Dykas now appeals, raising two assignments of error for our review. In the first assignment of error, he argues that there was insufficient evidence to support his convictions. In the second assignment of error, he argues that his convictions were against the manifest weight of the evidence. Even though these assignments of error involve different standards of review, we will discuss them together, as the evidence for both is the same.

{¶ 9} In *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, the Ohio Supreme Court set forth the standard of review for a challenge to the sufficiency of the evidence. If " 'reasonable minds [could] reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt,' " then the criminal defendant may not prevail on a challenge to the sufficiency of the evidence. *State v. Hall,* Cuyahoga App. No. 90365, 2009-Ohio-461, 2009 WL 270524, ¶ 83, quoting *Bridgeman,* syllabus. See also *State v. Walker,* Cuyahoga App. No. 89892, 2008-Ohio-4231, 2008 WL 3870628, ¶ 36.

{¶ 10} *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541, and *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *Thompkins* at 386, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a

defendant would support a conviction. *Jenks* at 263, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.

{¶ 11} While the test for sufficiency requires the appellate court to determine whether the state has met its burden of production at trial, the test for manifest weight requires the appellate court to determine whether the state has met its burden of persuasion. *Thompkins,* 78 Ohio St.3d at 390, 678 N.E.2d 541.

{¶ 12} When a defendant asserts that his or her conviction is against the manifest weight of the evidence, an appellate court sits as a 13th juror. Id. at 387, 678 N.E.2d 541. It must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 13} We must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. A reviewing court will not reverse a verdict when the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. Id. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Garrow* (1995), 103 Ohio App.3d 368, 659 N.E.2d 814.

{¶ 14} In this case, the jury convicted Dykas of involuntary manslaughter, in violation of R.C. 2903.04(B), which provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree * * *." The jury also convicted Dykas of assault pursuant to R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."

{¶ 15} Dykas argues that the state failed to prove beyond a reasonable doubt that he "knowingly" caused Hockey physical harm and the state failed to prove that his actions were anything more than "reckless." We disagree.

{¶ 16} R.C. 2901.22 states that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 17} Dykas admitted punching Hockey in the head. He also told the detectives that he believed that he knocked Hockey out when he punched him. Hockey lay on the ground motionless until Trabert helped him up. Based on this evidence, the jury could have reasonably found that Dykas was aware that punching Hockey in the head could cause him harm.

{¶ 18} Dykas argues that he acted in self-defense and that the state provided no evidence to rebut the claim. First, we note that Dykas raises his self-defense argument under his sufficiency-of-the-evidence argument. But when reviewing a claim by a defendant that evidence supports his claim of self-defense, the manifest-weight standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability. *Cleveland v. Williams*, Cuyahoga App. No. 81369, 2003-Ohio-31, 2003 WL 60989, ¶ 10, citing *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166. In this case, the state argues that Dykas waived his self-defense claim because he did not raise it in the manifest-weight assignment of error. But since Dykas did raise the issue on appeal, and since we have combined both assignments of error for review, we will address his self-defense claim.

{¶ 19} Dykas requested, and the jury received, an instruction on self-defense. To establish self-defense, Dykas must demonstrate by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the affray, (2) he had a bona fide belief that he was in imminent danger of great bodily harm and that his only means of escape from such danger was in the use of such force, and (3) he must not have violated any duty to retreat or avoid danger. *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279. See also *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus. The elements of self-defense are cumulative and, if the defendant failed to prove any one of the elements by a preponderance of the evidence, he failed to demonstrate that he acted in self-defense. *Williford.*

{¶ 20} We do not find that Dykas had a "bona fide" belief that he was in imminent danger. Based on eyewitness testimony, Hockey did not block the punch and did not use his body to break his fall, which supports the state's theory that he was not intending to assault Dykas. Although Dykas and one of the defense witnesses testified that Hockey approached Dykas with his fists raised, that testimony is in direct conflict with other witness testimony that Hockey did not have his hands raised. Moreover, Dykas could not explain how he ended up next to Hockey on the sidewalk when he claimed to be with his friends on Johnny Malloy's steps, which supports the inference that he approached Hockey, as opposed to Hockey's turning around and running up to Dykas. Thus, a review of

the transcript and evidence in this case shows that there was ample evidence presented to support the jury's findings that Dykas failed to prove his self-defense claim by a preponderance of the evidence.

{¶ 21} Next, Dykas argues that his assault and involuntary-manslaughter convictions were against the manifest weight of the evidence because his "punch" did not cause Hockey's death.

{¶ 22} In *State v. Robinson* (1994), 98 Ohio App.3d 560, 574, 649 N.E.2d 18, quoting *State v. Chambers* (1977), 53 Ohio App.2d 266, 272–273, 7 O.O.3d 326, 373 N.E.2d 393, we stated:

{¶ 23} " 'Having found that the Ohio legislature intended to adopt the proximate cause theory of criminal liability, as to R.C. 2903.04, we hold that when a person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and reasonably inevitable consequences of death resulting from his original criminal act.' See, also, *State v. Younger* (May 31, 1990), Cuyahoga App. No. 57080, unreported, 1990 WL 71529."

{¶ 24} A defendant cannot be held responsible for consequences that no reasonable person could expect to follow from his conduct, but he will be held responsible for consequences that are direct, normal, and reasonably inevitable when viewed in the light of ordinary experience. *State v. Losey* (1985), 23 Ohio App.3d 93, 95, 23 OBR 158, 491 N.E.2d 379. It is not necessary that the defendant "be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." Id. at 96, 23 OBR 158, 491 N.E.2d 379.

{¶ 25} Only a reasonably unforeseeable intervening cause will absolve one of criminal liability in this context. *State v. Lovelace* (1999), 137 Ohio App.3d 206, 215, 738 N.E.2d 418. "[W]hen the result varied from the harmed [sic] intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable." Id. at 216, 738 N.E.2d 418, citing LaFave & Scott, Criminal Law (1972), 246, Section 35.

{¶ 26} In *State v. Ervin*, Cuyahoga App. No. 87333, 2006-Ohio-4498, 2006 WL 2507563, ¶ 25, quoting *State v. Dixon* (Feb. 8, 2002), Montgomery App. No. 18582, 2002 WL 191582, *5, we stated:

{¶ 27} " 'Under the "proximate cause theory," it is irrelevant whether the killer was the defendant, an accomplice, or some third party such as the victim of

the underlying felony or a police officer. Neither does the guilt or innocence of the person killed matter. [A] Defendant can be held criminally responsible for the killing regardless of the identity of the person killed or the identity of the person whose act directly caused the death, so long as the death is the "proximate result" of Defendant's conduct in committing the underlying felony offense; that is, a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.'" See also *Chambers,* 53 Ohio App.2d 266, 7 O.O.3d 326, 373 N.E.2d 393; *State v. Bumgardner* (Aug. 21, 1998), Greene App. No. 97–CA–103, 1998 WL 892120.

{¶ 28} Here, it is a foreseeable consequence for someone to fall to the ground after being punched in the head. The coroner testified that she believed the cause of Hockey's death was blunt impact resulting in skull and brain injuries. Although she testified that a skull fracture of this nature would not likely be caused by the initial fist-to-head contact, she opined that Hockey's fracture was consistent with a subsequent fall creating contact between Hockey's head and the sidewalk. If Dykas had not punched Hockey in the head, Hockey would not have fallen to the ground and struck his head on the sidewalk and would not have sustained the injuries that ultimately caused his death. Therefore, the assault was a proximate cause of Hockey's death.

{¶ 29} It is not necessary that Dykas be able to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk that he created. *Lovelace,* 137 Ohio App.3d 206, 738 N.E.2d 418; *Dixon,* 2002 WL 191582; *Losey,* 23 Ohio App.3d 93, 23 OBR 158, 491 N.E.2d 379. Causal issues are normally left to the collective wisdom of the jury. *Lovelace.* Dykas is precluded from escaping responsibility in this case for what followed from his conduct; thus, we agree that Hockey's death was a foreseeable consequence of Dykas's actions. See *State v. Wilson,* 182 Ohio App.3d 171, 2009-Ohio-1681, 912 N.E.2d 133.

{¶ 30} We find that the jury did not lose its way and create a manifest miscarriage of justice in finding Dykas guilty of assault and involuntary manslaughter. Further, Dykas's convictions are supported by substantial, credible evidence upon which the jury could reasonably have concluded that the elements of his self-defense claim were not proved by a preponderance of the evidence.

{¶ 31} Accordingly, the first and second assignments of error are overruled.

Judgment affirmed.

COONEY, P.J., and BLACKMON, J., concur.