[Cite as *State v. Meisel*, 2011-Ohio-6426.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                          )
                                        )       CASE NO. 10 MO 4
    PLAINTIFF-APPELLEE,             )
                                        )
- VS -                                  )       OPINION
                                        )
RICHARD E. MEISEL, Jr.,                 )
                                        )
    DEFENDANT-APPELLANT.            )


CHARACTER OF PROCEEDINGS:            Criminal Appeal from Monroe
                                    County Court, Case No. 09 CRB 370.


JUDGMENT:                           Reversed and Remanded.


APPEARANCES:
For Plaintiff-Appellee:             Attorney Thomas Hampton
                                    Prosecuting Attorney
                                    101 North Main Street
                                    Room 15, P.O. Box 430
                                    Woodsfield, OH  43793


For Defendant-Appellant:            Attorney Mark Morrison
                                    117 North Main Street
                                    Woodsfield, OH  43793-1002


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                                    Dated: December 7, 2011

DeGenaro, J.

{¶1} Defendant-Appellant, Richard Meisel, appeals the June 23, 2010 judgment of the Monroe County Court convicting him of one count of domestic violence, following a bench trial, and sentencing him accordingly. Meisel contends that his conviction is against the sufficiency and weight of the evidence; that the trial court erroneously limited testimony about prior aggressive acts of the victim; and that the court applied the wrong legal standard for self-defense.

{¶2} Contrary to Meisel's assertions, the trial court never limited testimony of the victim's prior acts to the preceding three years; rather, defense counsel self-limited his questions to that time period in response to the prosecutor's objections. Further, Meisel's sufficiency challenge is meritless, since any reasonable fact-finder could have found Meisel guilty of domestic violence. However, the trial court applied an erroneous legal standard for self-defense. In light of this error, we cannot determine whether the conviction is against the weight of the evidence, since Meisel's manifest weight argument centers on this affirmative defense. Accordingly, the judgment of the trial court is reversed and the case remanded for the trial court to apply the correct legal standard to the facts adduced at trial.

## Facts and Procedural History

{¶3} On December 7, 2009, Meisel was charged by complaint with one count of domestic violence (R.C. 2919.25(A)), a first-degree misdemeanor, stemming from an incident where he punched T.P., his seventeen-year-old stepson. Meisel was arraigned, pled not guilty and a public defender was appointed. On June 2, 2010, the case was called for a bench trial, where the following evidence was adduced.

{¶4} T.P. testified that on November 21, 2009, he was at his home when an altercation occurred with Meisel. At approximately 6:00 p.m., T.P. was in his bedroom with his girlfriend with the lights off and the curtains down, a violation of house rules. Upon arriving home, Meisel was very upset about this and, according to T.P., screamed "no, none of that sh*t, that crap, that's not happening in my house. Get down here." T.P. complied, but was admittedly agitated because he had been fighting with his girlfriend earlier that day. The two began shouting at one another, and Meisel got so close to T.P.'s

face that their foreheads touched; as if Meisel was going to head butt him. In response, T.P. placed both hands on Meisel's chest and shoved Meisel back two or three feet. According to T.P., Meisel then shouted: "You think you're a man?" and then punched T.P. four or five times with his fists, in the stomach, back and chest. T.P. backed up down the basement stairs when Meisel hit him. He did not hit Meisel in return. T.P. said he was sore for several days thereafter. Following the incident, T.P. ran away from home and was eventually found by police the next day.

{¶5} On cross, T.P. testified that he was 180 pounds and 5'11" tall, shorter than Meisel. He admitted that he had been hospitalized for emotional problems several times in the past and that he was adjudicated an unruly child. At the time of the incident, T.P. was taking two psychiatric medications as prescribed.

{¶6} Monroe County Sheriff's Deputy Joseph Kress testified that on the evening of the incident, he received a call from Shelley Meisel, T.P.'s mother and Meisel's wife, to report that T.P. had run away. Deputy Kress searched for T.P. until after midnight, and eventually located him the next day. He took statements from both Meisel and T.P. Kress noted on cross that neither Meisel nor T.P. sustained any bruises.

{¶7} Meisel's statement to police was admitted into evidence, and states in part:

{¶8} "[T.P.] came down the stairs all cocky and shooting off at me, which in turn I stopped what I was doing and got into his face just like a Drill Instructor, happened many times in the past. This time he felt manly, told me to get the f*ck off him and shoved me back ½ a step. At this time I hit him with and upper cut to the lower left rib cage, followed by one to the right rib cage, knocking him on his ass. Once he got back up I was back into his face again like a D.I. and told him to stop his sh*t unless he wanted to continue, I turned and walked away grabbed my gear and [went] back outside with John Lucio * * *."

{¶9} The State rested and the defense proceeded with its case in chief on the theory of self-defense. Shelley Meisel testified about T.P.'s history of emotional and behavior issues, which included anger, violence, beating up his siblings and running away. She claimed that in the preceding three years, aside from the incident in question, Meisel had never become violent towards T.P. Shelley further testified that T.P. was

acting in an aggressive manner towards her on the day of the incident, and at one point shoulder-blocked her, and called her a b*tch. She did not witness the later confrontation between her husband and son.

{¶10} On cross-examination, Shelley advanced her belief that her husband was acting in self-defense. However, she was confronted with her statement to police, in which she wrote: " * * * but when [T.P.] pushed him like a man Rick [Meisel] felt if he didn't give him a small taste of what could happen, [T.P.] might escalate the aggression even more." She agreed that her statement did not mention self-defense. Her statement was later admitted into evidence.

{¶11} John Lucio, a friend of Meisel and Shelley, testified that he had known T.P. for several years. Most times T.P. was a caring brother, but he also had a short temper, sometimes exploding, throwing temper tantrums and arguing with his parents.

{¶12} Lucio arrived at the Meisels' home in the middle of the incident, and his recollection of the events was slightly different. He recalled that T.P. was upset because Meisel told T.P. he could not come with them to track a deer. Then, according to Lucio, T.P. shoved Meisel, took a swing at him and that Meisel reacted by punching T.P. in the stomach, admittedly hard enough to knock T.P. on his rear end. In his view, T.P. took the first aggressive action and Meisel acted in self-defense. When Meisel later testified, however, he conceded that T.P. never took a swing at him, and that his own recollection of events was more accurate than Lucio's. Lucio denied that Meisel was acting like a "drill instructor" towards T.P., yet in Meisel's written statement and his testimony, that is precisely how Meisel characterized his own behavior that day.

{¶13} Lucio also testified that as a licensed daycare provider and foster parent he was uncomfortable about what he witnessed and had a duty to report it to police, which he claimed to have done. According to Lucio, Deputy Kress told him he would have "done the same thing" if he were Meisel. Yet when later recalled to testify by the State, Deputy Kress denied making any such statement.

{¶14} R.M., T.P.'s ten-year-old stepbrother, was home during the incident. R.M. testified that he saw T.P. push his father, who then hit T.P. two times, the second time

"just enough to take his [sic] wind out of his sails and teach [T.P.] a lesson;" that T.P. should have known better than to shove Meisel; and that by the look on Meisel's face, he punched T.P. to teach him a lesson. R.M. did not see T.P. throw a punch.

{¶15} Meisel testified in his own defense. He stated he had been in T.P.'s life since T.P. was three years old, eventually marrying Shelley five years earlier. He saw T.P. go through multiple rounds of individual and family counseling. Among other things, T.P. exhibited aggression, lying and psychiatric issues. In 2004, T.P. was diagnosed with ADHD and Oppositional Defiant Disorder. In the prior three years, Meisel observed T.P. often fighting with his siblings and becoming more aggressive with his mother when he did not get his way. Meisel testified he never laid a hand on T.P. before the November 2009 incident.

{¶16} Meisel's testimony regarding the incident was consistent with his written statement to police, but with slightly more detail. He stated that when he got in T.P.'s face he was wearing a ball cap which was probably bouncing and hitting T.P. across the eyebrow. At that point T.P. told him to "get the f' off" of him and shoved Meisel, who stepped back to catch his balance. Meisel continued:

{¶17} "I said if you want to cross that line and go there and act like a man, I'm going to teach you what a man will do to you. I hauled off with an uppercut to the lower right - to the rib cage. He went down a little bit. I hit him on the other side. That took the rest of the wind out of him. He went straight back and right down on his rear end against the back of a chair that was sitting there in the living room."

{¶18} Meisel also testified that he hit T.P. "to get [his] point across, to end the situation." He agreed that T.P. never took a swing at him, only shoving him. However, he claimed that if he did not do something to stop it, T.P.'s aggression would have escalated.

{¶19} Finally, Jean Van Pelt, a family friend who did not witness the incident, testified about T.P.'s history of behavioral problems. T.P. would get along with his stepfather sometimes, but other times would "explode," punching walls and slamming doors. She had witnessed T.P. being aggressive towards his parents and siblings.

{¶20} In a June 9, 2010 judgment entry and written verdict, the trial court found

Meisel guilty of domestic violence as charged. Following a hearing, the court sentenced Meisel to 10 days in jail, all of which it suspended, along with a $150 fine and court costs. Meisel was placed on probation under the court's standard terms and conditions plus the added special conditions of no contact with T.P., and the completion of four sessions of anger management counseling.

### Limiting Prior Acts Evidence

{¶21} In his fourth of four assignments of error, Meisel asserts:

{¶22} "The trial court committed prejudicial error by limiting evidence of the prior aggressive acts of the victim to the last 3 years."

{¶23} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, at ¶43, citing *State v. Issa* (2001), 93 Ohio St.3d 49, 64, 752 N.E.2d 904. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶24} Although Meisel fails to provide a citation to the record to demonstrate where the alleged error occurred, see App.R. 16(A)-(D), a thorough review of the record reveals that the trial court made no such limitation. Initially, the State did object to an open-ended question posed to Shelley regarding T.P.'s medical and psychiatric history. The trial court overruled that objection, but warned defense counsel to keep the questions "fairly narrow." Notably, the trial court did not limit the testimony to a specific time period. Further, the trial court properly sustained an objection to questioning about T.P.'s past behavior towards other family members, teachers, doctors and other children at school, directing defense counsel to limit his questioning family interactions, particularly those with Meisel, since that was at issue. Finally, on several occasions during Shelley's testimony, the prosecutor objected to the broad scope of questioning regarding T.P.'s behavioral and psychological history, and in response defense counsel self-limited his subsequent questions to a three-year time period. The trial court itself never imposed a

three-year limitation.

{¶25} To the extent the trial court placed more general limitations on the scope of testimony regarding T.P.'s history of behavioral and emotional problems, those limits were reasonable and not an abuse of discretion. For instance, the court sustained an objection to a question regarding how many times T.P. had been hospitalized with anger issues in the past 10 years. Likewise, the trial court reasonably sustained an objection to testimony regarding something T.P. did to one of his siblings when T.P. was under the age of four. And warning defense counsel to watch the scope of the questioning on several other occasions likewise was proper, and not an abuse of discretion. Accordingly, Meisel's fourth assignment of error is meritless.

### Sufficiency

{¶26} In his first assignment of error, Meisel asserts:

{¶27} "The State presented insufficient evidence to establish every essential element of domestic violence beyond a reasonable doubt."

{¶28} Sufficiency of the evidence is the standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict." *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. Thus, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

{¶29} Meisel was convicted of domestic violence pursuant to R.C. 2919.25(A): "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶30} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances

probably exist." R.C. 2901.22(B). "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Family or household member" includes: "[a]ny of the following who is residing or has resided with the offender: * * * a child of a spouse." R.C. 2919.25(F)(1)(a)(iii).

{¶31} Within his sufficiency argument, Meisel raises a self-defense argument. "But when reviewing a claim by a defendant that evidence supports his claim of self-defense, the *manifest-weight* standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability. (Emphasis added.) *Cleveland v. Williams*, Cuyahoga App. No. 81369, 2003-Ohio-31, 2003 WL 60989, ¶10, citing *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166." *State v. Dykas*, 185 Ohio App.3d 763, 2010-Ohio-359, 925 N.E.2d 685, at ¶18.

{¶32} With that in mind, there is sufficient evidence that Meisel knowingly caused or attempted to cause physical harm to a family or household member, to wit, his stepson, T.P. According to T.P., Meisel punched him four or five times in the stomach, back and chest. Meisel admitted hitting T.P. two times with sufficient strength to knock T.P. down. Meisel testified: "I hit him with an uppercut to the lower left rib cage followed by one to the right rib cage, knocking him on his a**." Based on these facts any rational fact-finder could have found Meisel guilty of domestic violence. Accordingly, Meisel's first assignment of error is meritless.

### Erroneous Legal Standard for Self-Defense & Manifest Weight

{¶33} In his second and third assignments of error, Meisel asserts, respectively:

{¶34} "Appellant's conviction for domestic violence is against the manifest weight of the evidence."

{¶35} "The court erroneously applied standards and requirements that are contrary to law regarding proof necessary to establish the affirmative defense of self defense."

{¶36} Meisel asserts that the trial court applied the wrong standard for self-defense, and that in viewing the evidence under the correct legal standard, his conviction

for domestic violence is against the manifest weight of the evidence. The State concedes that the trial court utilized an incorrect standard for self-defense, but argues any such error is harmless, because even under the proper standard, Meisel failed to prove his affirmative defense by a preponderance of the evidence.

{¶37} In its June 9, 2010 Docket & Journal Entry the trial court stated the following with regards to self-defense: "'Self defense' is an affirmative defense. In order to successfully establish this defense this defendant must show by a preponderance of the evidence that (1) he was not at fault in creating the situation giving rise to the affray, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape from such danger was the use of forces [sic], and (3) that he did not violate any duty to retreat. In this case the defendant admitted that he 'got into (his step-son's) face just like a drill instructor.' This clearly indicates that the defendant contributed to the situation giving rise to the incident. The defendant also, failed to establish that when he pushed his step-son he did so believing that he was in danger of imminent death or bodily harm. Having determined that the defendant has failed to establish the defense of self defense, the court finds the defendant guilty of domestic violence."

{¶38} Here, the trial court erred by applying the wrong legal standard. "The elements of self-defense differ based upon the level of force used, i.e., the use of deadly force in self-defense triggers different elements than the use of non-deadly force." *Struthers v. Williams*, 7th Dist. No. 07 MA 55, 2008-Ohio-6637, at ¶13. In this case, Meisel used non-deadly force.

{¶39} In order to In order to establish a right of self-defense involving deadly force, the defendant must establish three elements: (1) that the defendant was not at fault in creating the situation; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that the only means of escape was in the use of force; and (3) that the defendant had not violated any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, at paragraph two of the syllabus. By contrast, "[t]he elements of self-defense where the

defendant is only alleged to have used non-deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant (even if mistaken) had a bona fide belief (which means a belief that was both objectively reasonable and subjectively honest) that he was in imminent danger of any bodily harm (whether it be deadly or non-deadly)." *Williams*, supra at ¶13, citing *State v. Morris*, 7th Dist. No. 03MO12, 2004-Ohio-6810, at ¶21.

{¶40} A major distinction between the two circumstances giving rise to a claim of self-defense is that the use of non-deadly-force does not contain a duty to retreat or avoid the danger. Nor does it require finding that the defendant was in imminent danger of death or great bodily harm, rather *any* bodily harm is sufficient. Thus, the trial court erred by applying the deadly force elements of self-defense.

{¶41} The question remains how to remedy this error. Both sides argue that this court should apply the correct self-defense standard, and based upon the record determine whether Meisel's conviction can stand. Meisel contends that his conviction would be against the manifest weight of the evidence. By contrast, the State asserts that Meisel's conviction would stand, rendering the legal error harmless.

{¶42} It would be problematic for this court to undertake a review of the evidence under the correct standard *in the first instance,* in that it would usurp the role of the trial court. The decision in *State v. Kerrigan*, 168 Ohio App.3d 455, 2006-Ohio-4279, 860 N.E.2d 816, is instructive. After a bench trial, the defendant was found guilty of violating R.C. 2907.323(A)(3) (illegal use of a minor in a nudity oriented material or performance.) In its written verdict, however, the trial court utilized an incorrect legal standard in finding the defendant guilty. Id. at ¶54-59. The Fourth District reversed and remanded the case.

{¶43} "[Despite the fact that] there was sufficient evidence upon which a reasonable fact-finder could predicate a conviction, we cannot say that any error demonstrated in the record is harmless. In a bench trial, the trial judge takes the place of the jury as the finder of fact. It would be no more appropriate for us to usurp the role of the trial judge as the finder of fact in a bench trial than it would be for us to usurp the role of the jury in a trial to the jury. In this respect, the situation in this appeal is similar to an

appeal predicated upon an error in an instruction of law given to a jury. Once we have determined that the trial court erred, to the prejudice of the defendant, in its instruction to the jury by misstating an element of the offense in a manner that makes it easier to find the defendant guilty, we may not disregard that error on the theory that the jury, having been correctly instructed, would have found the defendant guilty anyway. That determination is for the finder of fact, not for this court." Id. at ¶60.

{¶44} Accordingly, Meisel's third assignment of error, concerning the erroneous legal standard, is meritorious and this case is reversed and remanded to the trial court to apply the correct law to the facts of this case. As a result, Meisel's second assignment of error regarding manifest weight is not ripe for review.

{¶45} In sum, the trial court never limited testimony of the victim's prior violent acts to the three years preceding the incident giving rise to the charges against Meisel. Although Meisel's conviction is supported by sufficient evidence, because the trial court applied the incorrect legal standard for self-defense, we reverse and remand this case for the trial court to apply the non-deadly force elements of self-defense to the facts adduced at trial. As a result of this disposition, Meisel's claim that his conviction is against the manifest weight of the evidence is not ripe for review.

Donofrio, J., concurs.

Vukovich, J., concurs.