[Cite as *State v. Carson*, 2025-Ohio-166.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                     :

    Plaintiff-Appellee,       :

                    No.  113852

v.                                :

ISAIAH CARSON,                    :

    Defendant-Appellant.      :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 23, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-661186-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Timms, Assistant Prosecuting Attorney, *for appellee*.

P. Andrew Baker, *for appellant*.

EMANUELLA D. GROVES, P.J.:

{¶ 1} Defendant-appellant Isaiah Carson ("Carson") appeals his conviction for attempted felonious assault and assault. For the reasons that follow, we affirm the convictions.

**Factual and Procedural History**

{¶ 2}   On May 31, 2021, there was an event at a local restaurant, a meet and greet for businesspeople.  Carson attended with his girlfriend, Amber Mays ("Mays").  They were invited by Mike Burns, the nephew of Carson's best friend, Jermaine Burns ("Jermaine"), who was moving out of state, and this would give them an opportunity to touch base.  Jermaine, his sister Monique Burns ("Monique"), and her fiancé Anthony Stewart ("Stewart") also attended the event.  E.J., C.M., and approximately ten other women, including Monique, traveled to the event together in a sprinter van.  The organizer of the event had contracted with Monique to style the group of women to attend his events, to ensure the success of the venture.

{¶ 3}   Once the event ended, E.J. and C.M. got in the sprinter van to take pictures.  Carson was near the van talking to Monique and Stewart.  From this point forward, two stories emerged regarding what happened next.

{¶ 4}   Per C.M. and E.J., Carson approached them while they were sitting in the sprinter van taking pictures and attempted to flirt with C.M.  She told him she was not interested, and Carson did not take that rejection well.  E.J. overheard the conversation and stepped in when she overheard Carson complain about "females" with "attitudes."  E.J. insisted that Carson leave, at which point Carson became increasingly aggressive, calling the women "out of their names"[1] and shouting at

_____

[1] "Calling someone out of their name" is colloquialism used to refer to calling someone, usually a woman, a pejorative name.

them. E.J. continued to tell Carson to leave, and then Carson hit E.J. twice. After Carson hit E.J., several people approached Carson angrily, including C.M. C.M. testified that Carson hit her twice and the only thing she remembered after that was waking up in the hospital. Testimony and bodycam video established that C.M. was unconscious on the ground at the scene. Her medical records established she suffered loss of consciousness and a concussion.

{¶ 5} In contrast, Carson testified that after the event, he walked his girlfriend, Mays, to her car and told her he was going to see what people were going to do since it was still early. He approached Monique and her fiancé Stewart who were standing outside the sprinter van. While they were talking, E.J. walked up to him and asked him who he was. Stewart explained that Carson was their friend. E.J. seemed okay with that explanation. Carson made a joke, asking why she was mad, and E.J. seemed to reciprocate and joked back that she was not mad. Carson also noticed C.M. and described her as visibly intoxicated.

{¶ 6} Carson, Monique, and Stewart started to walk away when E.J. walked up to them again and asked them to go away because C.M. said they were all "corny." He said that C.M. was trying to start stuff. E.J. then got loud, and Carson responded that she was the one "being corny." E.J. followed him and kept telling him to just go. Carson saw security get out of the van and thought he was going to address E.J. Instead, the security guard approached Carson and told him he needed to leave. At that point Carson told him it was public property, and he did not have to go anywhere.

**{¶ 7}** Per Carson, the security guard escalated the situation, and Carson removed his jacket because he thought he might have to defend himself. Security approached again with three or four women, including E.J. Mays saw that something was wrong and exited the car to find out what was happening. E.J. told Mays that Carson was trying to flirt with her, at which point Carson essentially called E.J. "ugly," which set things off. Per Carson, E.J. lunged at him and he either mugged her or swatted her to push her away. It became a melee and all of the girls charged Carson, along with some men. C.M. tried to grab him at some point, and he mugged or swatted her as well. Per Carson, C.M. was still standing after that, and he never saw her fall to the ground.

**{¶ 8}** Jermaine did not see what happened. He walked his wife to their car; when he turned back, he saw a group of people, 10-15 of them, that he described as a mob. As he got closer, he realized they were charging Carson. Once he realized Carson was in the center of the melee, Jermaine sprinted to intervene. He did not see Carson hit anyone. Monique, likewise, did not see what caused the situation to escalate. She testified that Carson was talking to her when C.M. started arguing with Carson. At some point, the women got out of the van and charged Carson.

**{¶ 9}** Carson was indicted on one count of felonious assault, serious physical harm, against C.M.; assault against E.J.; and two counts of aggravated menacing against each alleged victim. He elected to try the case to the bench. The trial court ultimately found Carson guilty of the lesser included offense of attempted felonious assault and assault and not guilty of the two counts of aggravated

menacing. The trial court sentenced Carson to a period of community-control sanctions.

{¶ 10} Carson appeals raising the following errors for our review:

### Assignment of Error No. 1

Defendant-appellant's conviction for attempted felonious assault was not supported by sufficient evidence.

### Assignment of Error No. 2

Defendant-appellant's convictions for attempted felonious assault and assault were against the manifest weight of the evidence.

## Law and Analysis

## Sufficiency of the Evidence

{¶ 11} In his first assignment of error, Carson argues that his conviction for attempted felonious assault was not supported by sufficient evidence. In the instant case, the trial court found Carson guilty of attempted felonious assault and not the indicted offense of felonious assault.

{¶ 12} A challenge to the sufficiency of the evidence tests whether the State met its burden of production. *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). The reviewing court must examine the evidence at trial and determine "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 2021-Ohio-1299, ¶ 13 (8th Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. We must determine, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* The question is not "'whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *Id.*, quoting *Thompkins* at 390.

{¶ 13} To meet its burden of production, the State was required to present sufficient evidence to establish that Carson committed the crime of attempted felonious assault. Felonious assault requires evidence that Carson knowingly caused serious physical harm to another or to another's unborn. R.C. 2903.11(A)(1). With the addition of the attempt statute, the offense requires evidence that Carson, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, i.e., felonious assault, engaged in conduct that, if successful, would have constituted or resulted in the offense of felonious assault. R.C. 2923.02(A).

{¶ 14} The evidence established that Carson hit C.M. twice and that she woke up in the hospital. Carson argues that even if you look at the evidence in the light most favorable to the prosecution and find that he hit C.M. twice, there is no evidence that he knowingly attempted to cause her serious physical harm. Carson suggests that even if believed, no reasonable factfinder could believe that he intended to cause serious physical harm when he hit C.M. However, courts have recognized that there is an inherent danger of causing serious physical harm when a person hits someone in the face and/or head. *See State v. Jacinto*, 2020-Ohio-3722, ¶ 107 (8th Dist.).

{¶ 15} The evidence reflects that C.M. was 5′4″ tall and weighed 150 pounds. In contrast, Carson was 5′7″ tall and weighed 225 pounds. Carson hit C.M. with sufficient force that she was knocked unconscious. A single punch to the head poses a risk of serious physical harm. *Jacinto* at *id.* Carson's focus on whether or not one or two hits could form the basis of an attempted felonious assault conviction is misplaced. Carson suggests we must find that when he hit C.M. his intention was to actually cause serious physical harm. However,

> [a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.

R.C. 2901.22(B)

{¶ 16} It is well settled that the State is not required to show that the defendant knew the specific nature or extent of the injuries that would result from his actions. *State v. Benson*, 2018-Ohio-2235, ¶ 20 (8th Dist.), citing *State v. Luna*, 2015-Ohio-3079, ¶ 16 (6th Dist.).

> It is not necessary that a defendant be able to foresee the precise consequence of his or her conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk that the defendant created.

*Id.*, citing *State v. Dykas,* 2010-Ohio-359, ¶ 28 (8th Dist.).

{¶ 17} While it is possible that Carson did not specifically intend to cause serious physical harm to C.M., there was sufficient evidence presented to establish, if believed, that he intended to hit her, and did hit her with force and serious physical harm is a foreseeable consequence from a single hit.

{¶ 18} The cases Carson cites in support of his argument are distinguishable. In *State v. Thompson*, 2014-Ohio-1056 (8th Dist.), the defendant was charged with felonious assault but found guilty of attempted felonious assault. Thompson argued that there was insufficient evidence that he intended to cause serious physical harm for a conviction of attempted felonious assault. The testimony established that Thompson hit the child victim once in the head, she was bruised, but no medical treatment was required and there was no evidence that she would be permanently incapacitated or disfigured, nor that she underwent substantial pain and suffering as a result of the injury. *Id.* at ¶ 35. Here, the evidence established that Carson hit C.M., she was knocked unconscious and was treated for that period of unconsciousness and concussion. "Serious physical harm" includes "any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary substantial incapacity." R.C. 2901.01(A)(5)(c). A loss of consciousness qualifies as a temporary, substantial incapacity. *In re D.C.*, 2022-Ohio-4086, ¶ 34 (8th Dist.).

{¶ 19} In *State v. McSwain*, 2004-Ohio-3292 (8th Dist.), this court reversed the defendant's conviction for aggravated robbery finding that the evidence was insufficient to establish that the defendant caused or attempted to cause serious physical harm during the crime when he punched the victim once causing swelling that prevented her from eating for a few days. *Id.* at ¶ 24. Here, again, the evidence reflects that Carson's actions did result in serious physical harm. While one punch

did not result in serious physical harm in *McSwain*, the hits in this case did result in serious physical harm.

{¶ 20} Finally, at oral argument, Carson relied on *State v. Stafford*, No. 75739, 2000 Ohio App. LEXIS 912 (8th Dist. Mar. 9, 2000), in support of his argument. In that case, the defendant was convicted of attempted felonious assault after restraining his girlfriend, sitting on her chest, covering her mouth, and closing her nose. The defendant only stopped when the police kicked in the door after receiving complaints from a neighbor. Carson argues that this is the type of evidence necessary to establish attempted felonious assault. We disagree. A charge of felonious assault or attempted felonious assault requires evidence that the defendant acted knowingly, i.e., that what actually transpired was within the scope of results occasioned by the defendant's actions.

{¶ 21} Based on the foregoing, we find that the State presented sufficient evidence to support the conviction for attempted felonious assault. Accordingly, the first assignment of error is overruled.

**Weight of the Evidence**

{¶ 22} In the second assignment of error, Carson argues that his convictions were not supported by the manifest weight of the evidence. Specifically, Carson argues that he acted in self-defense, thus his actions were justified, and that, with respect to the attempted felonious assault charge, he did not attempt to cause serious physical harm.

**Self-Defense**

{¶ 23} With respect to a claim of self-defense, the Supreme Court has found that "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *State v. Messenger,* 2022-Ohio-4562, ¶ 25. Generally, self-defense claims center around credibility. *State v. Walker*, 2021-Ohio-2037, ¶ 13 (8th Dist.), "If evidence presented at trial tends to support the conclusion 'that the defendant used force against another in self-defense or in defense of another, the State must prove beyond a reasonable doubt that the defendant did not use the force in self-defense or defense of another.'" *Id.,* quoting *State v. Smith*, 2020-Ohio-4976, ¶ 49 (1st Dist.), citing R.C. 2901.05(B)(1).

{¶ 24} Self-defense requires evidence that the accused:

(1) Was not at fault in creating the situation giving rise to the affray;

(2) That the defendant reasonably believed that he was in imminent danger of bodily harm;

(3) His only means to protect himself from such danger was by the use of force not likely to cause death or great bodily harm.

*State v. Kilbane*, 2019-Ohio-863, ¶ 13 (8th Dist.).

{¶ 25} The State may refute a claim of self-defense by negating any one of the three elements of the self-defense claim. *State v. Williams*, 2023-Ohio-1903, ¶ 31 (8th Dist.).

{¶ 26} In the instant case, there was conflicting evidence about how the incident started. C.M. and E.J. testified that Carson had tried to flirt with C.M. and

became aggressive when he was rebuffed. Carson in contrast testified that E.J. approached him unprovoked. Nevertheless, the undisputed testimony was that at some point a number of people became angry and the source of that anger was Carson. Jermaine, in particular, testified that when he headed back to Carson, he saw a mob of 10 to 15 people going after someone, and as he got closer, he realized that the person was Carson. Tr. 82. Per E.J., several people went after Carson after he hit her. Based on the foregoing, the trial court could have found that Carson caused the situation leading up to the affray because he was hostile after being rejected and refused to leave, that he hit E.J. and did not merely swat or mug E.J., given everyone's reaction.

{¶ 27} The trial court's finding of guilt amounts to a finding that the State refuted Carson's claim of self-defense beyond a reasonable doubt. That finding was supported by the greater weight of the evidence.

## Weight of the Evidence Supporting Attempted Felonious Assault and Assault

{¶ 28} Turning to the offenses of attempted felonious assault and assault, it was undisputed that Carson hit both C.M. and E.J. In fact, by claiming self-defense, Carson "'concedes that he had the purpose to commit the act but asserts that he was justified in his actions.'" *State v. Davis*, 2021-Ohio-2311, ¶ 38 (8th Dist.), quoting *State v. Talley*, 2006-Ohio-5322, ¶ 45 (8th Dist.). In order to establish the crime of assault, the State must prove that Carson knowingly caused or attempted to cause physical harm to E.J. R.C. 2903.13(A). For attempted felonious assault, the State

must prove that Carson purposefully or knowingly engaged in conduct that, if successful, would constitute or result in felonious assault. R.C. 2923.02(A). One type of felonious assault occurs when a person knowingly causes serious physical harm to another. R.C. 2903.11(A)(2).

{¶ 29} When a reviewing court examines whether a conviction is against the manifest weight of the evidence, it, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d, at 387.

{¶ 30} Carson minimized his conduct by testifying that he either "swatted" or "mugged" the victims to stop them from hitting him. Having resolved the issue of self-defense, the only issue is whether the convictions for attempted felonious assault and assault were supported by the manifest weight of the evidence. E.J. testified that Carson became aggressive after C.M. rejected him, eventually yelling and calling the women "out of their names." She started asking him to leave and Carson responded by hitting her in the head and her body "kind of thrust over." After he hit her, everybody rushed in towards Carson and there was a lot of screaming and yelling. Further, bodycam video showed E.J. holding an ice pack to her head after police arrived. Contrasting E.J.'s testimony and the evidence with Carson's, testimony that he only swatted or mugged E.J., the trial court could have determined that it was more credible that the crowd charged Carson because he hit

E.J., forcefully. Accordingly, the assault conviction was supported by the manifest weight of the evidence.

{¶ 31} With respect to the attempted felonious assault conviction, Carson argues that the testimony that he hit C.M. twice in succession cannot establish that he attempted to cause serious physical harm. However, the mens rea for attempt is the same mens rea for the full offense, i.e., knowingly. R.C. 2923.02(A). This court has found that

> the State is not required to show that the defendant knew the specific nature or extent of the injuries that would result from the defendant's actions. *State v. Luna*, 6th Dist. Lucas No. L-14-1172, 2015-Ohio-3079, ¶ 16, citing *State v. Witt*, 6th Dist. Williams No. WM-04-007, 2005-Ohio-1379, ¶ 27. It is not necessary that a defendant be able to foresee the precise consequences of his or her conduct; only that the consequences be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk that the defendant created. *State v. Dykas*, 185 Ohio App. 3d 763, 2010-Ohio-359, 925 N.E.2d 685, ¶ 28 (8th Dist.).

*State v. Benson*, 2018-Ohio-2235, ¶ 20 (8th Dist.).

{¶ 32} C.M. testified that Carson hit her twice and the next thing she knew, she was waking up in the hospital. Carson argues that he did not intend to cause serious physical harm, nor could two hits, if you believe C.M., caused serious physical harm. Rather, Carson argues that C.M. must have had a seizure and was injured when she fell to the ground. The medical records indicated that C.M. had a history of seizures, and two lay witnesses, E.J. and a police officer, testified that C.M.

seemed to have a seizure that night. [2] However, the records proved that she was treated for a closed-head injury and a concussion. Based on her testimony that she blacked out after Carson hit her, the evidence that Carson hit E.J. more forcefully than a swat, and the absence of any testimony describing another source for her injuries, the trial court could have concluded that Carson knocked C.M. unconscious, which constitutes serious physical harm under R.C. 2901.01(A)(5)(c). *In re D.C.*, 2022-Ohio-4086, ¶ 34 (8th Dist.).

**{¶ 33}** Accordingly, we find that Carson's convictions were supported by the weight of the evidence. Carson's second assignment of error is overruled.

**{¶ 34}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
KATHLEEN ANN KEOUGH, J., CONCUR

---

[2] Although E.J. was a nurse at the time she testified, she had not completed her training at the time the incident occurred. She had worked as a home health aide but her training was not addressed.