# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TERRANCE EDMONDS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 18 MA 0110

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 18 CR 741

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*, and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Rhys Cartwright-Jones,* 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated: March 23, 2020

_____

**D'Apolito, J.**

{¶1} Appellant, Terrance Edmonds, appeals from the October 18, 2018 judgment of the Mahoning County Court of Common Pleas convicting him for attempted murder with a firearm specification and having weapons while under disability following a jury trial and sentencing him to 17 years in prison. On appeal, Appellant raises issues involving sufficiency of the evidence, manifest weight, and ineffective assistance of trial counsel. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2} Appellant was indicted by the Mahoning County Grand Jury on four counts: count one, felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) and (D), with a firearm specification in violation of R.C. 2941.145; count two, domestic violence, a felony of the third degree, in violation of R.C. 2919.25(A) and (D); count three, having weapons while under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(3) and (B); and count four, attempted murder, a felony of the first degree, in violation of R.C. 2923.02 and 2903.02(A), with a firearm specification in violation of R.C. 2941.145. Appellant was appointed counsel and pleaded not guilty at his arraignment.

{¶3} A jury trial commenced on October 1, 2018.

{¶4} Appellee, the State of Ohio, presented 60 exhibits and ten witnesses: Kayla Hunt, the sister of Denise Thurston ("the victim"); Officers Martin Stachowicz, Lacameron Workman, Brad Ditullio, and Mark Crissman, and Detective Rick Bruno Spotleson, with the Youngstown Police Department ("YPD"); Richard Kennedy, with the YPD 911 center; Donna Schwesinger, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation; Rick Valesko, a field paramedic; and Dr. Chander Mohb Kohli, a neurosurgeon at St. Elizabeth Hospital.

**{¶5}** On July 21, 2018, around 3:40 a.m., ShotSpotter indicated that multiple gunshots were fired in the area of 231 Hilton Avenue.[1] Officer Stachowicz responded but did not see anyone in the street. He canvassed the area but did not find any shell casings, live rounds, or firearms around the houses that he searched. Around 4:30 a.m., ShotSpotter indicated a single gunshot in front of 235 Hilton Avenue. Officers Stachowicz and Workman responded and "observed a male standing in his doorway at 236 Hilton." (Jury Trial T.p. 293). Appellant's mother, Frieda Hicks, resided at 236 Hilton Avenue.

**{¶6}** Officer Stachowicz approached the male, later identified as Appellant, and asked if anyone was shot. Appellant initially responded that he did not have a gun on him. Appellant then pointed to a white Chevrolet Impala that was parked a few houses away and stated, "'Somebody is shot in that car over there.'" (T.p. 294). The officers approached the vehicle, which was still in "drive." (T.p. 298). They observed the unresponsive victim "slumped back" in the driver's seat with "a possible gunshot wound to the left side of her head." (T.p. 297). The driver's side window was broken. There was blood on the victim and on the seat.

**{¶7}** Officer Stachowicz returned to 236 Hilton Avenue and spoke with Appellant again. Appellant asked if the victim was okay. Appellant initially did not tell the officer that he knew the victim. Appellant later "had his arms raised up like he was surrendering, and he made a statement that [he was] the one that shot her." (T.p. 301). Appellant told Officer Stachowicz that the victim was his live-in "girlfriend" and "that they were arguing."[2] (T.p. 302). Appellant told the officer that the gun he used was in the kitchen. Appellant's brother led the officer to the kitchen where the gun was located inside a drawer. (State's Exhibit 55). Appellant also pointed out to Officer Workman where he could find evidence. Officer Workman located two live 9mm rounds of ammunition in the front yard of 235 Hilton Avenue, which was a vacant house.

**{¶8}** Officers Ditullio and Crissman also responded to the scene. YPD recovered a Glock 9mm magazine containing 14 live rounds and a 9mm spent shell casing next to the passenger seat inside the victim's vehicle. (State's Exhibits 17, 56). Detective

---

[1] ShotSpotter is an advanced system of sensors, algorithms, and artificial intelligence that detects, locates, and alerts police to gunshots in real time. www.shotspotter.com
[2] Appellant and the victim resided together on Loveland Road.

Spotleson was assigned to investigate the shooting. He spoke with various neighbors and with Appellant's family members.

{¶9} Detective Spotleson later interviewed Appellant at the station. Appellant indicated that he was never inside the victim's car after the shooting occurred. Appellant told the detective that the victim possessed a 9mm Glock and threatened to kill him and herself. Police found an empty box of 9mm live rounds inside their apartment. Detective Spotleson believed it was the victim that posted the following on Facebook around 3:30 a.m. on July 21, 2018: "'Plz'"; "'Plz come outside'"; "'Can u plz come outside wtf'"; "'Im bout [s]tart shooting fuck it u wanna play'"; "'3h.'" (T.p. 509-510).

{¶10} At the close of the State's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

{¶11} Appellant testified and presented two witnesses: Freida Hicks; and Floyd Ellis, Jr.

{¶12} Ellis resided on East Lucius Avenue. He testified that before 2:00 a.m. on July 21, 2018, the victim walked up his driveway screaming out his sister's name while holding a 9mm firearm in her hand. Ellis indicated that the victim stayed for about 30 minutes before leaving. Ellis admitted that he never spoke with police even though Detective Spotleson left his business card at Ellis' house during the investigation.

{¶13} As stated, Appellant's mother, Hicks, resided at 236 Hilton Avenue. Hicks testified that she woke up to gunfire on July 21, 2018. She looked out her bedroom window and saw the victim's vehicle. She did not see who fired the shots. Hicks said Appellant went outside to speak with the victim. Hicks heard Appellant arguing with the victim. About 25 minutes later, and more gunfire, Appellant told Hicks to call the police. Hicks testified that Appellant told her that he shot the victim. Hicks called 911 and indicated that a woman had been shot.

{¶14} According to Appellant, around 2:00-2:30 a.m. on July 21, 2018, he and the victim left their Loveland Road residence and she dropped him off at his mother's house. Appellant stated that he then went to a bar where he remained for a couple hours before returning to his mother's. Appellant listened to music and went on Facebook Live. The victim was also on Facebook Live. Appellant indicated the victim told him to come outside or she would starting shooting. Appellant went to the bathroom and said his phone had

died. Appellant said his mother told him at that time that someone was outside shooting. Appellant indicated that the victim left Hilton Avenue. They continued to communicate via Facebook Live. Appellant asked the victim to return, which she did.

**{¶15}** Appellant was "nervous" and "scared" because he believed the victim had fired the shots earlier. (T.p. 564). However, he grabbed his gun, took the safety off, and went outside to speak with her. Appellant said the victim was "hysterical" and claimed that he was cheating on her. (T.p. 565). Appellant stated the victim said "I should kill you" and "I'm going to kill you." (T.p. 565-566). Appellant testified the victim "reached up" and pulled out a gun. (T.p. 566). Appellant claimed because he feared for his life, he shot her. He then went back in the house and told his mother to call 911. Appellant could not explain the fact that no gun was found in the victim's vehicle.

**{¶16}** The jury found Appellant guilty on all four counts, including the two firearm specifications, as charged in the indictment.

**{¶17}** On October 18, 2018, the trial court merged count one (felonious assault with a firearm specification) and count two (domestic violence) with count four (attempted murder with a firearm specification). The court consecutively sentenced Appellant to 36 months on count three (having weapons while under disability), 11 years for attempted murder, and three years on the firearm specification, for a total of 17 years in prison, with 80 days of credit for time served. The court further advised Appellant that post-release control is mandatory for five years. Appellant filed a timely appeal and raises two assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO RENEW HIS REQUEST FOR A RULE 29 ACQUITTAL AT THE CLOSE OF DEFENDANT'S CASE AND AFTER THE JURY RENDERED ITS VERDICT.**

In order to demonstrate ineffective assistance of counsel, Appellant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient

performance. *State v. Bradley*, 42 Ohio St.3d 136, 141-143, 538 N.E.2d 373 (1989), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both prongs must be established: If counsel's performance was not deficient, then there is no need to review for prejudice. Likewise, without prejudice, counsel's performance need not be considered. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Bradley* at 142-143, citing *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987). The United States Supreme Court has recognized that there are "countless ways to provide effective assistance in any given case." *Bradley* at 142, citing *Strickland* at 689.

To show prejudice, a defendant must prove his lawyer's deficient performance was so serious that there is a reasonable probability the result of the proceeding would have been different. *Carter* at 558. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley*, 42 Ohio St.3d 136 at fn. 1, 538 N.E.2d 373, quoting *Strickland* at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair as a result of the performance of

Case No. 18 MA 0110

trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

\* \* \*

[A]n ineffective assistance of counsel claim cannot be predicated upon supposition. *State v. Watkins*, 7th Dist. Jefferson No. 07 JE 54, 2008-Ohio-6634, ¶ 15. Likewise, proof of ineffective assistance of counsel requires more than vague speculations of prejudice. *Id.* ¶ 55, citing *State v. Otte*, 74 Ohio St.3d 555, 565, 1996-Ohio-108, 660 N.E.2d 711.

*State v. Rivers*, 7th Dist. Mahoning No. 17 MA 0078, 2019-Ohio-2375, ¶ 20-23, 27.

**{¶18}** Appellant asserts his trial counsel was ineffective for failing to renew his motion for acquittal at the close of his case and again at the close of all of the evidence.

To prevail on appeal, Appellant must establish that his counsel erred in failing to renew his motion for acquittal and that Appellant was prejudiced as a result. *Thompson,* 33 Ohio St.3d 1, 10, 514 N.E.2d 407. Thus, we must determine whether the trial court could have granted a motion for acquittal had counsel requested it at the close of all of the evidence.

[Generally] [o]ur standard of review on this issue, which is essentially a sufficiency of the evidence claim, is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Williams* (1996) 74 Ohio St.3d 569, 660 N.E.2d 724, cert. denied 519 U.S. 835, 117 S.Ct. 109, 136 L.Ed.2d 62; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

*State v. Christian*, 7th Dist. Mahoning No. 02 CA 170, 2005-Ohio-1440, ¶ 29-30.

**{¶19}** Within his sufficiency argument, however, Appellant raises a self-defense claim.

> "[W]hen reviewing a claim by a defendant that evidence supports his claim of self-defense, the *manifest-weight* standard is the proper standard of review because a defendant claiming self-defense does not seek to negate an element of the offense charged but rather seeks to relieve himself from culpability. (Emphasis added.) *Cleveland v. Williams,* Cuyahoga App. No. 81369, 2003-Ohio-31, 2003 WL 60989, ¶ 10, citing *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166." *State v. Dykas,* 185 Ohio App.3d 763, 2010-Ohio-359, 925 N .E.2d 685, at ¶ 18.

*State v. Meisel*, 7th Dist. Monroe No. 10 MO 4, 2011-Ohio-6426, ¶ 31.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.* * *

> The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 47-48.

> A defendant must prove self-defense by a preponderance of the evidence and may use his own testimony to do so if necessary. *State v. Koliser*, 7th Dist. No. 97–CO–16, 2000 WL 288518, *2 (March 15, 2000). To sufficiently raise a claim of self-defense, the defendant must show:

Case No. 18 MA 0110

The elements of self-defense through the use of deadly force include that the defendant: (1) was not at fault at creating the situation giving rise to the affray; (2) had a bona fide belief that they were in imminent danger of death or great bodily harm and their only means of escape from such danger was the use of such force; and (3) did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

*State v. Sutherland*, 7th Dist. Mahoning No. 15 MA 0219, 2017-Ohio-9381, ¶ 14.

**{¶20}** Here, Appellant's trial counsel did request an acquittal, pursuant to Crim.R. 29, at the close of the State's case, which was overruled by the trial court. (Jury Trial T.p. 524-525). Failing to renew that motion is not ineffective assistance in this case because there is no prejudice. "Counsel has no duty to make fruitless motions." *State v. Stragisher*, 7th Dist. Columbiana No. 03 CO 13, 2004-Ohio-6797, ¶ 76; *see also State v. Heckathorn*, 7th Dist. 17 CO 0011, 2019-Ohio-1086, ¶ 34.

**{¶21}** Reviewing the evidence in the case at bar, we conclude that Appellant's affirmative defense of self-defense is not supported by a preponderance of the evidence. As stated, Appellant asked the victim to return to Hilton Avenue, which she did. Appellant grabbed his gun, took the safety off, and went outside to speak with her. Appellant claimed the victim had a gun so he shot her because he feared for his life. Appellant could not explain why no gun was found in her vehicle. Thus, Appellant failed to present evidence that he was not at fault in creating the confrontation, that he was in imminent danger of death or great bodily harm and that his only means of escape was in the use of such force, and that he did not violate any duty to retreat or avoid the danger. *See Sutherland, supra,* at ¶ 14.

**{¶22}** Furthermore, the jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. The jury was in the best position to weigh the credibility of the witnesses and resolve any conflicts. Based on the evidence presented, the jury did not clearly lose its way in finding Appellant guilty. *Thompkins, supra*, at 387. Had Appellant's trial counsel renewed his motion for acquittal, it undoubtedly would have

been overruled. Appellant cannot establish that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the Constitution.

{¶23} Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THERE WAS INSUFFICIENT EVIDENCE TO FIND THE APPELLANT GUILTY OF DOMESTIC VIOLENCE AND HIS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

A conviction does not exist where there has been a guilty verdict or plea but no sentence. *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12. *State v. Henderson,* 58 Ohio St.2d 171, 177-179, 389 N.E.2d 494 (1979). *See also* Crim.R. 32(B). Thus, where a disputed offense was merged with a greater offense, there is no conviction to vacate on appeal.

The Supreme Court has concluded that, even if there is insufficient evidence to support one count, where that count has been merged with another count, the error in rendering a verdict on that count is harmless beyond a reasonable doubt. *State v. Powell,* 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990). * * *

*State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 59-60.

{¶24} Here, the trial court merged the domestic violence count with his conviction for attempted murder. Accordingly, Appellant was sentenced to 11 years for attempted murder and was not sentenced for domestic violence. Thus, Appellant's sufficiency and manifest weight arguments regarding domestic violence need not be addressed because, even assuming arguendo his contention has merit, there exists no conviction for this court to vacate. In other words, any error would be harmless under *Powell.*

{¶25} Appellant's second assignment of error is without merit.

Case No. 18 MA 0110

**CONCLUSION**

**{¶26}** For the foregoing reasons, Appellant's assignments of error are not well-taken. The judgment of the Mahoning County Court of Common Pleas convicting Appellant for attempted murder with a firearm specification and having weapons while under disability following a jury trial and sentencing him to 17 years in prison is affirmed.


Donofrio, J., concurs.

Waite, P.J., concurs.

———————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**