[Cite as *State v. Walton*, 2023-Ohio-585.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :        APPEAL NO. C-220201
                                                 TRIAL NO.   B-2104602-A
     Plaintiff-Appellee,              :

                                        :        *O P I N I O N.*

  vs.                                   :

                                        :

SASHAY WALTON,                          :

     Defendant-Appellant.             :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 1, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1}    Defendant-appellant Sashay Walton appeals from his convictions for felonious assault and having a weapon while under disability following the shooting of Dontai Robinson. Walton argues that his convictions were against the manifest weight of the evidence. For the reasons set forth below, we affirm the judgment of the trial court.

## I. Procedural History

{¶2}    In September 2021, Walton was indicted on one count of felonious assault under R.C. 2903.11(A)(1), a second-degree felony; one count of felonious assault under R.C. 2903.11(A)(2), a second-degree felony; and one count of having weapons while under disability ("WUD") under R.C. 2923.13(A)(3), a third-degree felony. After a bench trial, Walton was found guilty of all three counts. The trial court merged the felonious-assault counts, and Walton was sentenced to eight years' incarceration on the felonious-assault count, plus three years' incarceration on the WUD count to be served concurrently. This appeal timely followed.

## II. Factual History

{¶3}    According to Robinson's testimony, late on the evening of August 24, 2021, Robinson's girlfriend, Felecia Smith, called him and invited him over to her apartment to talk. Robinson arrived at the parking lot adjacent to Smith's apartment building. Shortly after midnight, Smith came out to Robinson's car. Another man, later identified as Walton, exited from Smith's apartment and sat on the stairs outside of the building, smoking a cigarette. Although Robinson and Walton knew each other well, Robinson did not immediately recognize Walton because it was dark outside and Walton was relatively far away.

{¶4}   Robinson and Smith talked in Robinson's car for about five minutes. Robinson thought Smith was "acting weird." After Smith returned to her apartment, Robinson approached the man sitting on the stairs to ask for a cigarette. As Robinson approached the man, he recognized him as Walton. After Robinson asked Walton for a cigarette, Walton reached inside his jacket and produced a handgun. Robinson turned and fled, and Walton shot at him several times as he was running away. Robinson was hit four times in the leg.

{¶5}   Robinson called 9-1-1, and during the call, Robinson said he knew who the shooter was, but he did not know the shooter's name. Police were already en route, having been notified of the gunshots by Cincinnati's ShotSpotter system.[1] When responding officers arrived, Robinson identified the shooter as "Shay," telling them that he did not know Shay's "government name." Robinson also provided responding officers with the name Roderick Davis, which he knew Shay to use on Facebook. Police used facial recognition to match the Roderick Davis profile to the Bureau of Motor Vehicles record for Walton. When Robinson was shown Walton's photo, Robinson confirmed that Walton was the man who had shot him.

{¶6}   After Robinson identified Walton, a warrant was issued for his arrest. Walton was eventually arrested near the apartment belonging to his girlfriend, Rochelle Jones. Although Walton emphasizes that he voluntarily surrendered to police, this surrender took place after arresting officers had searched Jones's apartment for an hour or two and failed to find him. Having learned that he was in or near the building, officers eventually used a drone to find Walton on the roof of the

---

[1] "ShotSpotter is an advanced system of sensors, algorithms, and artificial intelligence that detects, locates, and alerts police to gunshots in real time." *State v. Edmonds*, 7th Dist. Mahoning No. 18 MA 0110, 2020-Ohio-1148, ¶ 5, fn. 1.

building. Walton only surrendered after he was discovered on the roof, and police had to improvise a means to reach him from the roof access of an adjacent building. After discovering that Walton was on the roof, officers deduced that he had fled out a window of Jones's apartment, and the window had been "restaged," with belongings replaced in the area to conceal the recent use of the window.

{¶7}   In the aftermath of Walton's arrest, Jones called in a false report of aggravated robbery against Robinson. Jones informed Walton of this on a phone call while Walton was in jail, and Walton was recorded responding that "he had a chance now."

{¶8}   At trial, Robinson testified that he and Smith had been shot the week prior to this incident. Robinson testified that Smith blamed Robinson for her being shot, and Robinson speculated that Smith had arranged for Walton to shoot him in retaliation for that incident.

{¶9}   Smith testified on Walton's behalf. On direct examination, Smith testified that she had not had any interaction with Robinson that night. During cross-examination, however, Smith admitted that she had seen Robinson that night and that Robinson had been in the hallway outside her apartment for 30-45 minutes when he came over uninvited to "harass" her. Smith also testified that she did not know Walton before this incident. Upon further questioning, Smith said that she and Walton were "close" because Walton knew Smith's aunt and that Smith had conversations with Walton via Facebook while she was in the hospital.

{¶10}  Analysis of Walton's cell phones that he surrendered to police showed that at 11:07 p.m. and 1:02 a.m., before and after the shooting, Walton was not near Smith's apartment. However, there were no location "pings" on the phone between

4

those times. Detective Bryan Delk of the Cincinnati Police Department ("CPD") testified that during this two-hour gap, either no data activity took place on the phone or the phone was turned off.

{¶11} Police recovered nine .40-caliber shell casings from near the scene. No firearm was recovered that matched the shell casings.

### III. Analysis

{¶12} In his sole assignment of error, Walton claims that his conviction for felonious assault was against the manifest weight of the evidence. He also argues that his WUD conviction was based solely on the felonious assault, and therefore this conviction must also be reversed if the felonious-assault conviction is reversed.

{¶13} A manifest-weight argument "challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10. When we review a challenge to the manifest weight of the evidence, we must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). The court should only reverse the conviction and grant a new trial in an "exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶14} Walton argues that Robinson's testimony contains several inconsistencies that call his credibility into question. Walton claims that the inconsistencies in Robinson's testimony must be weighed against the results of the

police investigation, which failed to yield any conclusive evidence that Walton was the shooter. Walton argues that the trial court lost its way when it found Robinson's testimony to be credible.

{¶15} The trial court found that Robinson's testimony was consistent with his 9-1-1 call, his statements to responding officers, and his interview with the CPD detective. During Robinson's 9-1-1 call, he reported that he knew the person who shot him, but that he didn't know the person's name. Minutes later, when responding officers arrived at the scene, Robinson elaborated that he knew the shooter as "Shay," that he didn't know the shooter's legal name, and that he knew the shooter used the name Roderick Davis on Facebook. Robinson did not at any point claim to know the shooter's legal name. Rather, he knew only aliases, which he gave to the officers. This was not an inconsistency.

{¶16} Walton complains that Robinson did not share the full story of his view of events until later, with additional details added that he did not tell the 9-1-1 operator or responding officers. Robinson spoke to the 9-1-1 operator and responding officers within minutes after experiencing the traumatic injury of being shot. Body-worn-camera video from one of the responding officers shows that he primarily answered questions from the officers as best he could under the circumstances. The additional details Robinson provided later do not create an inconsistency with his statements at the scene, nor do they suggest a lack of credibility.

{¶17} Walton also argues that the lack of physical evidence against him suggests that Robinson's testimony is not credible. Police did not recover a firearm from Walton matching the shell casings found at the scene, and Walton's cell phone did not show any location data from the time of the shooting. The trial court noted that

6

the physical evidence of shell casings and the cell-phone geolocation data do not establish Walton as the shooter, but neither do they exclude Walton as the shooter. We agree with the trial court that, while this evidence does not corroborate Robinson's testimony, it does not contradict it.

**{¶18}** Walton points out that Smith testified that Walton was not present at her apartment that evening. However, the trial court also noted inconsistencies in Smith's testimony and that Smith admitted she was upset with Robinson over being shot a few weeks prior. Given the inconsistencies in Smith's testimony, the trial court did not lose its way by finding Robinson's version of events more credible than Smith's.

**{¶19}** After a thorough review of the record, and weighing all the evidence, we cannot say that this is one of the rare cases in which the trier of fact lost its way.

### IV. Conclusion

**{¶20}** For the foregoing reasons, we overrule Walton's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.